# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE HOPE COLLEGE DATA SECURITY BREACH LITIGATION | Case No: 1:22-cv-01224-PLM<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**DECLARATION OF BENJAMIN F. JOHNS IN SUPPORT
OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Benjamin F. Johns, declare:

1.     I am an attorney admitted to practice before this Court, as well as before the Supreme Courts of Pennsylvania and New Jersey. I make the foregoing declaration based upon personal knowledge and, if compelled to testify as a witness, would testify competently thereto.

2.     I am privileged to serve as the proposed lead settlement class counsel ("Settlement Class Counsel") on behalf of the Plaintiffs and the putative class ("Class") in this litigation. I am a founding partner of Shub & Johns LLC, and my firm regularly litigates class actions and data breach cases in Michigan and throughout the United States. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan. I have attached the executed Settlement Agreement as **Exhibit 1** to

1

this Declaration, dated September 8, 2023.

3.     This case arises from a data incident (the "Data Incident") experienced by Defendant Hope College ("Hope") on or about September 27, 2022 that involved the potential unauthorized access of Personally Identifiable Information ("PII") of approximately 156,783 individuals.

4.     Plaintiff Jennie Devries initiated this action against Hope by filing a complaint on behalf of herself and a class of all others similarly situated on December 26, 2022 (initially titled as *Devries v. Hope College*), the first complaint filed against Hope in relation to the Data Incident. ECF No. 1.

5.     Subsequently, beginning on December 27, 2022, and through January 2023, four related complaints were filed against Hope. *See Garnett v. Hope College*, Case No. 1:22-cv-01225, filed December 27, 2022; *Cyphers v. Hope College*, Case No. 1:23-cv-00013, filed January 5, 2023; *Drost v. Hope College*, filed January 20, 2023; and *Rodgers v. Hope College*, Case No. 1:23-cv-00109 (collectively, with *Devries*, the "Related Cases").

6.     The plaintiffs in the Related Cases, in the interests of judicial economy, coordinated with each other and with defense counsel, and, on February 9, 2023, the Plaintiffs jointly filed a motion to consolidate all Related Cases under this case number. *See* Joint Motion to Consolidate, ECF No. 8. On February 14, 2023, the Court granted the relief requested therein. Order Granting

2

Consolidation, ECF No. 11.

7.      Thereafter, on March 16, 2023, the Plaintiffs filed a Consolidated Amended Complaint ("CAC"), on behalf of themselves and on behalf of all others similarly situated, and the Plaintiffs are now all added as named Plaintiffs here. CAC, ECF No. 12.

8.      On May 2, 2023, the Parties submitted a Stipulation for Extension of Time, ECF No. 15, and the Court entered an Order the same day approving the extension of Hope's time to answer to May 14, 2023. ECF No. 16.

9.      The Operative Consolidated Amended Complaint alleges, on or about September 27, 2022, Hope experienced the potential unauthorized access of Personally Identifiable Information ("PII") of certain individuals. CAC, ECF No. 12, PageID.196. The Consolidated Amended Complaint.

10.     Throughout this time, the Parties discussed the possibility of exploring an early resolution via mediation. On May 15, 2023, the Parties filed a Joint Motion to Stay Litigation Pending Settlement Discussions, requesting a stay of 120 days (through September 13, 2023). ECF No. 17. On May 16, 2023, the Court granted this request, and issued an order staying the case for 120 days and directing the Parties to select a mediated by June 5, 2023. ECF No. 18.

11.     To that end, the Parties collaboratively agreed upon a mediator, and, on May 30, 2023, the Parties informed that Court that they had selected mediator

Bennett G. Picker, Esq. of Stradley Ronon, ECF No. 19, and, on June 6, 2023, Mr. Picker was appointed as Mediator for this matter. ECF No. 21.

12.    Prior to attending mediation, the Parties engaged in pre-mediation discovery under Fed. R. Evid. 408, which included the following areas of inquiry: cyber-forensic reports, internal investigations, correspondence with government regulatory agencies, number of persons affected by the Data Incident, security measures taken post-Data Incident, the types of PII compromised during the Data Incident, and the amount of insurance coverage.

13.    Prior to the mediation, Plaintiffs served Hope with written questions seeking information relevant to the Data Breach and potential resolution.

14.    Hope produced this information with sufficient time for Plaintiffs' Counsel to thoroughly evaluate and include it in their analysis of damages. Through informal discovery, Plaintiffs uncovered that the Data Incident potentially disclosed the personal information of approximately 156,783 individuals, including current and former employees. Through informal discovery, the Parties were able to draft and exchange mediation briefs outlining each Party's respective position.

15.    To further assist in reaching a resolution among the Parties, Mr. Picker convened telephone calls with both sides prior to the mediation.

16.    On August 3, 2023, the Parties mediated the matter with Mr. Picker.

17.    The parties were unable to reach a resolution but, at the conclusion
of the mediation, Mr. Picker made a mediators' proposal that was ultimately
accepted by both sides.

18.    The Parties agreed to resolve all claims asserted in the Consolidated
Amended Complaint. Hope has agreed to provide a non-reversionary Settlement
Fund of $1,500,000.00. The Settlement Fund will be distributed to Settlement
Class Members pursuant to the Notice and Distribution Plan (*see* Ex. A,
Settlement Agreement, § 3.6–3.7), from which the Settlement Administrator
will disburse to Settlement Class Members (less any amounts used to pay for
Administrative Expenses, including Notice, Costs, and any Fee and Service
awards).

19.    In addition to the credit monitoring service and other non-monetary
benefits provided by this Settlement, the monetary settlement here results in a
payment of approximately $9.57 per Settlement Class Member. The ultimate
amount will depend on how many claims are submitted and for which options
(credit monitoring, cash payments, or extraordinary expense reimbursement).

20.    The Parties have selected Epiq Class Action & Claims Solutions,
Inc. ("Epiq") to be the Settlement Claims Administrator. Within 14 days of
Preliminary Approval, the Administrator will be provided with the Class List,
which the Agreement defines as the lists of the names and last known physical

5

address of each Settlement Class Member.

21.    Using these lists, Epiq will run the postal addresses of Settlement Class Members through the USPS National Change of Address database to update any change of address on file with the USPS.

22.    In the event that a Short Notice is returned to Epiq and the envelope contains a forwarding address, Epiq will re-send the Short Notice to the forwarding address within seven (7) days.

23.    In the event that a Short Notice is returned to Epiq and it is at least fourteen (14) days prior to the Opt-Out Date and Objection Date, and there is no new forwarding address, Epiq will perform a standard skip trace in an effort to ascertain the current address of the Settlement Class Member and, if such an address is ascertained, Epiq will re-send the Short Notice within seven (7) days.

24.    Epiq is also responsible for establishing and maintaining a Settlement Website that will host a traditional "Long Form" notice. At the Website, Settlement Class Members will be able to learn about the Settlement Agreement, be advised of key dates and deadlines, and review important settlement documents. Settlement Class Members will also be able to use the Settlement Website to download claim forms for mailing and to submit such claim forms electronically.

25.    The global resolution achieved by the Parties in the Settlement came

about through well-informed Parties and their counsel. Plaintiffs' Counsel received and reviewed voluminous documentation produced by Hope. These documents confirmed Plaintiffs' analysis of the legal merits in this case.

26.    After thorough informal discovery and based on their experience in numerous prior data breach cases, Plaintiffs' Counsel were confident that the evidence would establish Hope's liability and prove damages on a class-wide basis.

27.    Plaintiffs' Counsel kept in close contact with Plaintiffs during the litigation through numerous emails and personal telephone calls. Plaintiffs here have been vital in litigating this matter, have been personally involved in the case, and support the Settlement.

28.    Plaintiffs actively assisted Plaintiffs' Counsel with their investigation. Plaintiffs sat through multiple interviews and provided supporting documentation and personal information throughout the process.

29.    In view of the contested issues involved, the risks, uncertainty, and costs of further prosecution of the litigation, the parties agreed to mediate under the guidance of Mr. Picker, who facilitated rigorous negotiations over the course of an all-day mediation session. The mediation was highly contested, with counsel for each side advancing their respective arguments zealously on behalf of the best interests of their clients while demonstrating their willingness to

7

continue to litigate rather than accept a settlement not in the best interests of their clients. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length and, while conducted in a highly professional and respectful manner, was adversarial.

30.    Settlement Class Counsel will request up to a $1,500 service award to each Named Plaintiff in recognition of the time, effort, and expense they incurred in pursuing claims benefiting the Settlement Class. Plaintiffs in this case have been vital in litigating this matter and have been personally involved throughout the litigation here.

31.    Plaintiffs' counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, including: obtaining, reviewing and analyzing Plaintiffs' detailed personal records; analyzing Hope's records, privacy policies, and any remedial steps; analyzing the scope and number of persons impacted by the Data Breach; analyzing Hope's financial condition; participating in mediation; and, ultimately, negotiating a settlement that provides meaningful relief for the Settlement Class, despite the substantial litigation risks that were present.

32.    Plaintiffs collectively request that the Court appoint me as Settlement Class Counsel. A copy of Shub & Johns LLC's firm resume is attached to this Declaration (**Exhibit 2**).

8

33.    The Plaintiffs are also represented in this matter by numerous other attorneys and law firms with a vast amount of class action and data breach litigation experience.

34.    Settlement Class Counsel, and all Plaintiffs' Counsel, recommends, for the Court's consideration, preliminary approval of the Settlement because it is well within the range of possible approval and represents a fair, reasonable, and adequate settlement and is in the best interests of the Settlement Class.

35.    A proposed order granting the relief requested in Plaintiffs' Motion is attached hereto as **Exhibit 3**.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of September, 2023, in Drexel Hill, Pennsylvania.

By:    _____
Benjamin F. Johns
(PA Bar No. 201373)

# Exhibit 1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, dated September 8, 2023, is made and entered into by and among Plaintiffs, for themselves individually and on behalf of the Settlement Class, and Hope College. This Settlement Agreement fully and finally resolves and settles all of Plaintiffs' and the Settlement Class's Released Claims, upon and subject to the terms and conditions hereof, and subject to the Court's approval.

## RECITALS

**WHEREAS**, on September 27, 2022, Hope College experienced an incident wherein an unauthorized third-party was able to access a server storing unencrypted full names, dates of birth, Social Security numbers, driver's license numbers, and student ID numbers (collectively, "Private Information") of 156,783 individuals (the "Data Breach").

**WHEREAS**, on March 16, 2023, Plaintiffs filed their Consolidated Amended Complaint in the Western District of Michigan arising out of the Data Breach.

**WHEREAS**, after considerable meet and confer efforts, the Parties agreed to mediate the case.

**WHEREAS**, in preparation for the scheduled mediation, the Parties exchanged certain information related to the Action. The Parties also prepared for mediation by laying out their respective positions on the litigation, including with respect to the merits, class certification and settlement, to each other and the mediator.

**WHEREAS**, in the weeks prior to the mediation, the Parties maintained an open dialogue concerning the contours of a potential agreement to begin settlement negotiations.

**WHEREAS**, on August 3, 2023, the Parties engaged in a mediation session before Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. The mediation assisted the parties in resolving their outstanding differences and resulted in an agreement to settle this matter in principle. In the time that followed that mediation session, the Parties were able to finalize all the terms of this Settlement Agreement.

**WHEREAS**, pursuant to the terms set forth below, this Agreement resolves all actual and potential claims, actions, and proceedings as set forth in the release contained herein, by and on behalf of members of the Settlement Class defined herein, but excludes the claims of all Class Members who opt out from the Settlement Class pursuant to the terms and conditions herein.

**WHEREAS**, Proposed Settlement Class Counsel ("Class Counsel"), on behalf of Plaintiffs and the Settlement Class, have thoroughly examined the law and facts relating to the matters at issue in the Action, Plaintiffs' claims, and Hope College's potential defenses, including conducting independent investigation and confirmatory discovery, conferring with defense counsel through the settlement negotiation process, as well as conducting an assessment of the merits of expected arguments and defenses throughout the litigation, including on a motion for class certification. Based on a thorough analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden, expense, and delay of continued litigation, including the risks

and uncertainties associated with litigating class certification and other defenses Hope College may assert, a protracted trial and appeal(s), as well as the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits expediently. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation.

**WHEREAS**, Plaintiffs and Class Counsel believe that the terms set forth in this Settlement Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Settlement Class.

**WHEREAS**, Hope College has similarly concluded that this Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims of Plaintiffs and the Settlement Class.

**WHEREAS**, this Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and Hope College specifically denies any and all wrongdoing. The existence of, terms in, and any action taken under or in connection with this Agreement shall not constitute, be construed as, or be admissible in evidence as, any admission by Hope College of (i) the validity of any claim, defense, or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

**WHEREAS**, the foregoing Recitals are true and correct and are hereby fully incorporated in, and made a part of, this Agreement.

**NOW, THEREFORE**, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

1.    **DEFINITIONS**

As used in this Agreement, the following terms shall be defined as follows:

1.1    "Action" means the class action captioned *In re Hope College Data Security Breach Litigation*, No. 22-cv-01224, filed on March 16, 2023 in the United States District Court for the Western District of Michigan.

1.2    "Administrative Expenses" means all charges and expenses incurred by the Settlement Administrator in the administration of this Settlement, including, without limitation, all expenses and costs associated with claims administration, the Notice Plan and providing Notice to the Settlement Class. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.3   "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

1.4   "Approved Claim(s)" means a claim as evidenced by a Claim Form submitted by a Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

1.5   "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

1.6   "Claimant" means a Class Member who submits a Claim Form for a Settlement Payment.

1.7   "Claim Form" means the form attached hereto as **Exhibit A**, as approved by the Court. The Claim Form must be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Claim Form shall be available for download from the Settlement Website. The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Class Member who so requests.

1.8   "Claims Deadline" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date ninety (90) days after the Notice Date. The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting Preliminary Approval.

1.9   "Claims Period" means the period of time during which Class Members may submit Claim Forms to receive their given share of the Settlement Benefits and shall commence on the Notice Date and shall end on the date ninety (90) days thereafter.

1.10   "Class Counsel" means attorneys Benjamin F. Johns of Shub & Johns LLC.

1.11   "Class Member" means a member of the Settlement Class.

1.12   "Class Representatives" and "Plaintiffs" means Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter.

1.13   "Court" means the United States District Court for the Western District of Michigan.

1.14   "Data Breach" refers to the unauthorized access that is the subject of the Action and which was discovered by Hope College on or around September 27, 2022, and disclosed publicly on or around December 15, 2022.

3

1.15    "Documented Loss" refers to monetary losses incurred by a Class Member and supported by Reasonable Documentation for attempting to remedy or remedying issues that are more likely than not a result of Data Breach, as further described in Section 3.2(a) below. Documented Loss must be supported by Reasonable Documentation that a Class Member actually incurred unreimbursed losses and consequential expenses that are more likely than not traceable to the Data Breach and incurred on or after September 27, 2022.

1.16    "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 10.1 below.

1.17    "Entity" means any person, corporation, partnership, limited liability company, association, trust, agency, or other organization of any type.

1.18    "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of reasonable litigation costs and expenses awarded by the Court to Class Counsel, to be paid from the Settlement Fund.

1.19    "Final Approval Order" means the order to be entered by the Court after the Final Approval Hearing, which approves the Settlement Agreement. The Final Approval Order must be substantially similar to the form attached hereto as **Exhibit B**.

1.20    "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to the Federal Rules of Civil Procedure and whether to issue the Final Approval Order and Judgment.

1.21    "Hope College's Counsel" or references to counsel for Hope College means attorney Jill H. Fertel and other attorneys at the law firm Cipriani & Werner PC.

1.22    "Hope College" or "Defendant" means Defendant Hope College, and its current and former affiliates, parents, subsidiaries, and successors.

1.23    "Judgment" means the judgment to be entered by the Court, to be substantially similar to the form of **Exhibit C**.

1.24    "Long Form Notice" means the long form notice of settlement substantially in the form attached hereto as **Exhibit D**.

1.25    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, (ii) Service Awards approved by the Court, (iii) any amounts approved by the Court for the Fee Award and Costs, and (iv) applicable taxes, if any.

1.26    "Notice" means notice of the proposed class action settlement to be provided to Class Members pursuant to the Notice Plan approved by the Court in connection

with preliminary approval of the Settlement. The Notice shall consist of the Summary Notice, the Long Form Notice, and the Settlement Website and toll-free telephone line.

1.27    "Notice Date" means the date upon which Settlement Class Notice is initially disseminated to the Settlement Class by the Settlement Administrator, which shall be no later than thirty-five (35) days after entry of the Preliminary Approval Order.

1.28    "Notice Plan" means the settlement notice program, as approved by the Court, developed by the Settlement Administrator and described in this Agreement for disseminating Notice to the Class Members of the terms of this Agreement and the Final Approval Hearing.

1.29    "Objection Deadline" means the date by which Class Members must file and postmark required copies of any written objections, pursuant to the terms and conditions herein, to this Settlement Agreement and to any application and motion for (i) the Fee Award and Costs, and (ii) the Service Awards, which shall be sixty (60) days following the Notice Date.

1.30    "Opt-Out Period" means the period in which a Class Member may submit a Request for Exclusion, pursuant to the terms and conditions herein, which shall expire sixty (60) days following the Notice Date. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

1.31    "Parties" means the Plaintiffs and Defendant Hope College.

1.32    "Personal Information" means information compromised in the Data Breach, including names, dates of birth, Social Security numbers, driver's license numbers, and student ID numbers.

1.33    "Preliminary Approval Order" means an order by the Court that preliminarily approves the Settlement (including, but not limited to, the forms and procedure for providing Notice to the Settlement Class), permits Notice to the proposed Settlement Class, establishes a procedure for Class Members to object to or opt out of the Settlement, and sets a date for the Final Approval Hearing, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as **Exhibit E**.

1.34    "Reasonable Documentation" means documentation supporting a claim for Documented Loss including, but not limited to, credit card statements, bank statements, invoices, telephone records, and receipts. Documented Loss costs cannot be documented solely by a personal certification, declaration, or affidavit from the Claimant; a Class Member must provide supporting documentation.

1.35    "Released Claims" means any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein),

5

suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted on behalf of the Settlement Class in the Action related to or arising from the Data Breach regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action. "Released Claims" do not include any claims against any entity other than Released Parties and are subject to Section 4 below.

1.36    "Released Parties" means Defendant and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of its past, present, and future officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party."

1.37    "Request for Exclusion" is the written communication by a Class Member in which he or she requests to be excluded from the Settlement Class pursuant to the terms of the Agreement.

1.38    "Service Awards" means the amount awarded by the Court and paid to the Class Representatives in recognition of their role in this litigation, as set forth in Section 8 below.

1.39    "Settlement" means this settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.40    "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc., the third-party class action settlement administrator to selected by the Parties subject to the approval of the Court. Under the supervision of Class Counsel, the Settlement Administrator shall oversee and implement the Notice Plan and receive any requests for exclusion from the Class. Class Counsel and Hope College may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.41    "Settlement Benefit(s)" means any Settlement Payment, the Credit Monitoring and Insurance Services, the Documented Loss Payments, the Cash Fund Payments, the Prospective Relief set forth in Sections 2 and 3 herein, and any other benefits Class Members receive pursuant to this Agreement, including non-monetary benefits and relief, the Fee Award and Costs, and Administrative Expenses.

1.42    "Settlement Class" and "Class" means all natural persons whose Personal Information was compromised in the Data Breach that was discovered by Hope College on or around September 27, 2022. Excluded from the Settlement Class

are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Hope College, its subsidiaries, parent companies, successors, predecessors, and any entity in which Hope College or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

1.43    "Settlement Fund" means the sum of One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00), to be paid by Hope College, as specified in Section 3.1 of this Agreement.

1.44    "Settlement Payment" means any payment to be made to any Class Member on Approved Claims pursuant to Section 3.2 herein.

1.45    "Settlement Website" means the Internet website to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms.

1.46    "Summary Notice" means the summary notice of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit F**.

1.47    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants). All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Agreement ("Tax Expenses"), shall be paid out of the Settlement Fund. Further, Taxes and Tax Expenses shall be treated as, and considered to be, an Administration Expense and shall be timely paid by the Settlement Administrator, out of the Settlement Fund, without prior order from the Court and the Settlement Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members with Approved Claims any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). The Parties hereto agree to cooperate with

the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "administrator." The Settlement Administrator shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the escrow account (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this Agreement) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in this Agreement.

1.48    "Unknown Claims" means any and all Released Claims that Hope College or any Class Representative or Class Member does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her, or it, might have materially affected his, her, or its decision(s) with respect to the Settlement. Class Representatives and Class Counsel acknowledge, and each Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

1.49    "CAFA Notice" means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b) and in accordance with Section 5.2 of this Agreement.

## 2.    SECURITY COMMITMENTS; PROSPECTIVE RELIEF

2.1    Hope College agrees to adopt, continue, and/or implement the following (or substantially similar) data and information security measures, at its expense, which are designed to strengthen Hope College's data and information security. The parties have agreed that Hope College will implement the measures for at least three years from the Effective Date of this Agreement:

(a)    Hope College has increased its internal and third-party Information Technology professionals, including a newly employed System Manager for Servers with specialized training in Information Security. Hope College has greatly increased its use of contracted database administrators and application specialists with significant expertise in the specific data systems utilized by the College to train and augment the efforts of Hope College's IT staff.

(b)    Hope College has established a data governance committee. The committee's goals include a commitment to retain sensitive data only when legally required or operationally necessary. An initial round of data analysis and deletion has been completed as of the date of this writing.

8

(c)    Hope College has enforced mandatory multi-factor authentication for: all email accounts; the self-service portal (accessing direct deposit changes, class schedules, grades, etc.) Hope College continues to work to identify every system that can support multi-factor authentication and enable the same whenever possible.

(d)    Hope College has updated its enterprise data loss prevention rules to continue to block personal information from leaving the organization through email or shared documents.

(e)    Hope College has reviewed and revised its enterprise firewall rules in an effort to increase its resistance to external access.

(f)    Hope College has hired an independent security contractor to perform both external penetration testing and an internal vulnerability scan. An additional vendor will be hired in late 2023 to make an independent risk assessment of the IT/network infrastructure.

(g)    Hope College has hired an independent contractor to perform remote monitoring and management to facilitate system scanning, reporting, and patch management for its on-site server environment.

(h)    Hope College has increased its mandatory training, with all employees required to take Cybersecurity Overview, Email and Messaging Safety, and Password Security Basics courses. All employees are also required to complete training detailing the confidentiality of student records pursuant to the Family Educational Rights and Privacy Act (FERPA). Employees with access to sensitive information such as IT employees, employees with access to banking information, and employees with access to personally identifiable information are required to take additional courses specific to their respective levels of access. Participation is scrutinized and enforced and all participants must complete an assessment to demonstrate comprehension.

2.2    Upon request, Hope College will provide Class Counsel with sufficient information to confirm that each of these measures has been or will be implemented, including through a confirmatory interview conducted with one of Hope College's IT professionals who can attest to the measures that Hope College has or will take in accordance with this Agreement. Hope College further agrees to provide Class Counsel with ongoing status reports as needed at their request.

## 3.    SETTLEMENT FUND / MONETARY PAYMENT / BENEFITS DETAILS

3.1    Hope College agrees to make or cause to be made a payment of One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00), to create the Settlement Fund as follows: within 30 days after the later of (a) entry of the Preliminary Approval Order, which shall include an order establishing the Settlement Fund pursuant to pursuant to Treasury Regulation § 1.468B-1(c)(1), or (b) receipt from

the Settlement Administrator of detailed wire instructions and a completed W-9 form, Hope College agrees to and shall cause the sum of One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00) to be deposited in an interest-bearing bank escrow account established and administered by the Settlement Administrator (the "Escrow Account"). The Escrow Account shall be held in a Qualified Settlement Fund (defined below) in interest-bearing bank account deposits with commercial banks with excess capital exceeding One Billion United States Dollars and Zero Cents ($1,000,000,000.00), with a rating of "A" or higher by S&P and in an account that is fully insured by the United States Government or the FDIC. The Settlement Fund will be used to pay Approved Claims, Administrative Expenses (to be agreed upon by both parties), the Fee Award and Costs, and Service Awards. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Hope College's liability shall not exceed One Million, Five Hundred Thousand Dollars and No Cents ($1,500,000.00).

(a)     All interest on the funds in the Escrow Account shall accrue to the benefit of the Settlement Class. Any interest shall not be subject to withholding and shall, if required, be reported appropriately to the Internal Revenue Service by the Settlement Administrator. The Administrator is responsible for the payment of all Taxes.

(b)     The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 at all times after the creation of the Escrow Account. All Taxes shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification). For the purpose of the Internal Revenue Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund. The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in the previous paragraph) shall be consistent with this paragraph and in all events shall reflect that all taxes (including the Taxes, any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Settlement Administrator shall maintain control over the Settlement Fund and shall be responsible for all disbursements. The Settlement Administrator shall not disburse any portion of the Settlement Fund except as provided in this Agreement and with the written agreement of Class Counsel and Defendant's Counsel or by order of the Court. All funds held by the Settlement Administrator shall be deemed and considered to be *in custodia legis* of the Court, and shall remain

10

subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order of the Court.

3.2   <u>Settlement Payments</u>: Each Class Member may qualify and submit a claim for one of the following:

    (a)    <u>Documented Loss Payment</u>. Class Members may submit a claim for a Settlement Payment of up to $5,000 (Five-Thousand Dollars) for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Class Member must choose to do so on their Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss made under penalty of perjury; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. If a Class Member does not submit Reasonable Documentation supporting a Documented Loss Payment claim, or if a Class Member's claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason, and the Class Member fails to cure his or her claim, the claim will be rejected and the Class Member's claim will instead be automatically placed into the Cash Fund Payment category below.

    (b)    <u>Credit Monitoring and Insurance Services ("CMIS")</u>. In the alternative to the Documented Loss Payment or the Cash Fund Payment, class members may elect to claim 12 months of CMIS to be provided by a vendor agreed upon by the parties. The CMIS benefit will provide at a minimum three credit bureau monitoring services and $1 million in identity theft insurance. Said CMIS benefits will be available to class members irrespective of whether they took advantage of any previous offering of credit monitoring from Hope College. Individuals who elected to utilize a previous offering of CMIS from Hope College, or who obtained CMIS services from another provider as a result of the Data Breach, will be permitted to postpone activation of their CMIS settlement benefit for up to 12 months.

    (c)    <u>Cash Fund Payment</u>. In the alternative to the Documented Loss Payment or the CMIS benefit, Class Members may submit a claim to receive a pro rata Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 3.7 below. Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select any of the other Settlement Benefits provided for under Section 3.2(a)-(b).

3.3   <u>Settlement Payment Methods.</u> Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement via various digital methods. In the event that Class Members do not

exercise this option with the Settlement Administrator, they will receive their Settlement Payment via a physical check sent to them by U.S. Mail.

3.4    <u>Deadline to File Claims.</u> Claim Forms must be received postmarked or electronically within ninety (90) days after the Notice Date.

3.5    <u>The Settlement Administrator.</u> The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete. To the extent the Settlement Administrator determines a claim is deficient for a reason other than late posting, within a reasonable amount of time, the Settlement Administrator shall notify the Claimant (with a copy to Class Counsel) of the deficiencies and notify the Claimant that he or she shall have thirty (30) days to cure the deficiencies and re-submit the claim. No notification is required for late-posted claims. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim. If the Claimant fails to cure the deficiency, the claim shall stand as denied, and the Class Member shall be so notified if practicable.

3.6    <u>Timing of Settlement Benefits.</u> Within ninety (90) days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Class Member who is entitled to funds based on the selection made on their given Claim Form.

3.7    <u>Distribution of Settlement Payments</u>: The Settlement is designed to exhaust the Settlement Fund. The Settlement Fund shall be used to make payments for the following: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) Service Award, and (iv) taxes. The remaining amount is the Net Settlement Fund. The Settlement Administrator will first apply the Net Settlement Fund to pay for CMIS claimed by Class Members. If Net Settlement Funds remain after paying for the CMIS, the Settlement Administrator will next use it to pay valid claims for Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied and the payments for the CMIS are made shall be referred to as the "Post CM/DL Net Settlement Fund." The Settlement Administrator shall then utilize the Post CM/DL Net Settlement Fund to make all Cash Fund Payments pursuant to Section 3.2(c) herein. The amount of each Cash Fund Payment shall be calculated by dividing the Post CM/DL Net Settlement Fund by the number of valid claims submitted for Cash Fund Payments.

In the event the Net Settlement Fund is insufficient to cover the payment for the CMIS claimed by Class Members, the duration of the CMIS coverage will be reduced to exhaust the fund. In such an event, no Net Settlement Funds will be distributed to Claimants for Approved Claims for Documented Loss Payments or for Cash Fund Payments. In the event that the aggregate amount of all Documented Loss Payments and payments for the CMIS exceeds the total amount of the Net Settlement Fund, then the value of the Documented Loss Payment to be paid to each Class Member shall be reduced, on a pro rata basis, such that the aggregate

value of all Documented Loss Payments and payments due for CMIS does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed to Claimants with Approved Claims for Cash Fund Payments. All such determinations shall be performed by the Settlement Administrator.

3.8    <u>Deadline to Deposit or Cash Physical Checks</u>. Class Members with Approved Claims who receive a Documented Loss Payment or a Cash Fund Payment, by physical check, shall have sixty (60) days following distribution to deposit or cash their benefit check.

3.9    <u>Residual Funds</u>. The Settlement is designed to exhaust the Settlement Fund. To the extent any monies remain in the Net Settlement Fund more than 120 days after the distribution of all Settlement Payments to the class members, a subsequent Settlement Payment will be evenly made to all Class Members with approved claims for Cash Fund Payments who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average check or digital payment in a distribution is less than three dollars ($3.00), whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed by mutual agreement of the Parties to a Court-approved non-profit recipient. Should it become necessary to distribute any remaining amount of the Net Settlement Fund to a Court-approved non-profit recipient, the Parties shall petition the Court for permission to do so, providing the Court with details of the proposed non-profit recipient.

3.10    <u>Returned Payments</u>. For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make one additional effort to make any digital payments and engage in a reasonable efforts to find a valid address (in the case of physical checks) and resend the Settlement Payment within thirty (30) days after the physical check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall make one attempt to repay or resend a Settlement Payment.

3.11    <u>Residue of Settlement Fund</u>. No portion of the Settlement Fund shall ever revert or be repaid to Hope College after the Effective Date.

3.12    <u>Custody of Settlement Fund</u>. The Settlement Fund shall be deposited into the Escrow Account but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated, or cancelled. In the event this Settlement Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason, any amounts remaining in the Settlement Fund after payment of all Administrative Expenses incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement

Fund net of any Taxes, shall be returned to Hope College and/or its insurer, and no other person or entity shall have any further claim whatsoever to such amounts.

3.13    <u>Non-Reversionary</u>. This is a non-reversionary settlement. As of the Effective Date, all rights of Hope College and/or its insurer in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as set forth herein. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Hope College and/or its insurers.

3.14    <u>Use of the Settlement Fund</u>. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for: (i) all Administrative Expenses; (ii) any Taxes; (iii) any Service Awards; (iv) any Fee Award and Costs; and (v) the Settlement Payments and/or Settlement Benefits, pursuant to the terms and conditions of this Agreement.

3.15    <u>Payment / Withdrawal Authorization</u>. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and Hope College with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) Business Days prior to making such withdrawal or payment.

3.16    <u>Payments to Class Members</u>. The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Class Members pursuant to this Agreement.

3.17    <u>Taxes</u>. All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Taxes do not include any federal, state, and local tax owed by any Claimant, Class Representative and Class Member as a result of any benefit or payment received as a result of the Settlement. Each Class Representative and Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.18    Limitation of Liability.

    (a)    Hope College and its Counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

    (b)    Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

    (c)    The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives, and Hope College, and Hope College's Counsel harmless for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## 4.    RELEASE

4.1    Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members identified in the settlement class list in accordance with Section 6.4, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other

15

person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Breach or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

4.2     The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

## 5.     REQUIRED EVENTS AND COOPERATION BY PARTIES

5.1     <u>Preliminary Approval</u>. Class Counsel shall submit this Agreement to the Court and shall promptly move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit E**.

5.2     <u>CAFA Notice</u>. Within ten (10) days after Plaintiffs file the motion for preliminary approval of the Settlement, Defendant shall provide CAFA Notice to the appropriate officials of the United States, the State of Michigan, the other forty-nine states, and U.S. territories. Defendant shall bear the costs of such notice. When Defendant provides CAFA Notice in accordance with Section 11(a) of this Agreement, they shall provide copies of the CAFA Notice to Plaintiffs.

5.3     <u>Cooperation</u>. The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement If, for any reason, the Parties determine that the schedule set by the Court is no longer feasible, the Parties shall use their best judgment to amend the schedule to accomplish the goals of this Agreement.

5.4     <u>Certification of the Settlement Class</u>. For purposes of this Settlement only, Plaintiffs and Hope College stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. Hope College reserves the right to contest class certification for all other purposes. Plaintiffs and

16

Hope College further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

5.5 <u>Final Approval</u>. The Parties shall request that the Court schedule the Final Approval Hearing for a date that is no earlier than one hundred twenty (120) days after the entry of the Preliminary Approval Order. The Parties may file a response to any objections to the Settlement and a Motion for Final Approval no later than fourteen (14) days after the Objection Deadline.

## 6.    CLASS NOTICE, OPT-OUTS, AND OBJECTIONS

6.1    Notice shall be disseminated pursuant to the Court's Preliminary Approval Order.

6.2    The Settlement Administrator shall oversee and implement the Notice Plan approved by the Court. All costs associated with the Notice Plan shall be paid from the Settlement Fund.

6.3    <u>Direct Notice</u>. No later than the Notice Date, or such other time as may be ordered by the Court, the Settlement Administrator shall disseminate Notice to the Class Members via direct mail.

6.4    <u>Settlement Class List</u>. Within fourteen (14) days after the issuance of the Preliminary Approval Order, Hope College will provide to the Settlement Administrator a list of any and all names, mailing addresses, telephone numbers, and email addresses of any and all Class Members that it has in its possession, custody, or control.

6.5    <u>Confidentiality</u>. Any information relating to Class Members provided to the Settlement Administrator pursuant to this Agreement shall be provided solely for the purpose of providing Notice to the Class Members (as set forth herein) and allowing them to recover under this Agreement; shall be kept in strict confidence by the Parties, their counsel, and the Settlement Administrator; shall not be disclosed to any third party; shall be destroyed after all distributions to Class Members have been made; and shall not be used for any other purpose. Moreover, because the Class Member list and information contained therein will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Class Counsel and Hope College's Counsel, and will ensure that any information provided to it by Class Members, Class Counsel, Hope College, or Hope College's Counsel, will be secure and used solely for the purpose of effecting this Settlement.

6.6    <u>Fraud Prevention</u>. The Settlement Administrator shall use reasonable and customary fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Class Members, (ii) submission of more than one Claim Form per person, and (iii) submission of Claim Forms seeking amounts to which the claimant is not entitled. In the event a Claim Form is submitted without

17

a unique Class Member identifier, the Settlement Administrator shall employ reasonable efforts to ensure that the Claim is valid.

6.7    <u>Settlement Website</u>. Prior to any dissemination of the Summary Notice and prior to the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative Consolidated Class Action Complaint in the Action, and will (on its URL landing page) notify the Settlement Class of the date, time, and place of the Final Approval Hearing. The Settlement Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly. The Settlement Website shall also allow for submission of Requests of Exclusion electronically through the Settlement Website.

6.8    <u>Opt-Out/Request for Exclusion</u>. The Notice shall explain that the procedure for Class Members to opt out and exclude themselves from the Settlement Class is by notifying the Settlement Administrator in writing, postmarked no later than sixty (60) days after the Notice Date. Any Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period. To be valid, the Request for Exclusion must be postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. In the event a Class Member submits a Request for Exclusion to the Settlement Administrator via US Mail, such Request for Exclusion must be in writing and must identify the case name "*In re Hope College Data Security Breach Litigation*"; state the name, address, telephone number and unique identifier of the Class Member seeking exclusion; identify any lawyer representing the Class Member seeking to opt out; be physically signed by the person(s) seeking exclusion; and must also contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in '*In re Hope College Data Security Breach Litigation*.'" Any person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. Requests for Exclusion may only be done on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than 150 timely and valid individual opt-outs (exclusions) submitted, Hope College may, by notifying Class Counsel and the Court in writing, void this Agreement. If Hope College terminates the Agreement under this section, Hope College shall be obligated to pay the Administrative

Expenses incurred by the Settlement Administrator to that date for work performed in connection with the Agreement.

6.9    Objections. The Notice shall explain that the procedure for Class Members to object to the Settlement is by submitting written objections to the Court no later than sixty (60) days after the Notice Date (the "Objection Deadline"). Any Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. Any Class Member who wishes to object to the Settlement, the Settlement Benefits, Service Awards, and/or the Fee Award and Costs, or to appear at the Final Approval Hearing and show cause, if any, for why the Settlement should not be approved as fair, reasonable, and adequate to the Class, why a final judgment should not be entered thereon, why the Settlement Benefits should not be approved, or why the Service Awards and/or the Fee Award and Costs should not be granted, may do so, but must proceed as set forth in this paragraph. No Class Member or other person will be heard on such matters unless they have filed in this Action the objection, together with any briefs, papers, statements, or other materials the Class Member or other person wishes the Court to consider, within sixty (60) days following the Notice Date. All written objections and supporting papers must clearly (a) identify the case name and number; (b) state the Class Member's full name, current mailing address, and telephone number; (c) contain a statement by the Class Member that he or she believes themself to be a member of the Settlement Class; (d) include proof that the Class Member is a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Breach); (e) identify the specific factual and legal grounds for the objection; (f) identify whether the Objection is an objection to the Settlement in part or in whole; (g) state whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (h) identify all counsel representing the Class Member, if any; (i) include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past five (5) years; (j) include all documents or writings that the Class Member desires the Court to consider; (k) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing; and (l) contain the signature of the Class Member or the Class Member's duly authorized attorney or representative. All objections must be submitted to the Settlement Administrator, Class Counsel identified below, and to the Court either by mailing them to: Clerk, Western District of Michigan, Southern Division, 399 Federal Bldg, 110 Michigan St. NW, Grand Rapids, MI 49503, or by filing them in person at the Courthouse. All objections must be filed or postmarked on or before the Objection Deadline, as set forth above. Any Class Member who does not make their objections in the manner and by the date set forth in this paragraph shall be deemed to have waived any objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court. Without limiting the foregoing, any challenge to the Settlement Agreement, the Order Granting Preliminary Approval of the Class Action Settlement Agreement, and the Final Approval Order and Judgment shall be pursuant to appeal under the applicable rules of appellate procedure and not through a collateral attack.

19

7.    **SETTLEMENT ADMINISTRATION**

7.1    <u>Submission of Claims</u>.

(a)    <u>Submission of Electronic and Hard Copy Claims</u>. Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and will provide Claimants notice and the ability to cure defective claims, unless otherwise noted in this Agreement.

(b)    <u>Review of Claim Forms</u>. The Settlement Administrator will review Claim Forms submitted by Class Members to determine whether they are eligible for a Settlement Payment.

7.2    <u>Settlement Administrator's Duties</u>.

(a)    <u>Cost Effective Claims Processing</u>. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner, and calculate Settlement Payments in accordance with this Agreement.

(b)    <u>Dissemination of Notices</u>. The Settlement Administrator shall disseminate the Notice Plan as provided for in this Agreement.

(c)    <u>Maintenance of Records</u>. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Hope College's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Hope College's Counsel with information concerning Notice, administration, and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator also shall:

(i)    Receive Requests for Exclusion from Class Members and provide Class Counsel and Hope College's Counsel a copy thereof no later than five (5) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion or other requests from Class Members after expiration of the Opt-

20

Out Period, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Hope College's Counsel;

(ii)    Provide weekly reports to Class Counsel and Hope College's Counsel that include, without limitation, reports regarding the number of Claim Forms received, the number of Claim Forms approved by the Settlement Administrator, the amount of Claims Forms received (including a breakdown of what types of claims were received and approved), and the categorization and description of Claim Forms rejected by the Settlement Administrator. The Settlement Administrator shall also, as requested by Class Counsel or Hope College's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

(iii)    Make available for inspection by Class Counsel and Hope College's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

(iv)    Cooperate with any audit by Class Counsel or Hope College's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

7.3    <u>Requests For Additional Information</u>: In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Class Member who submits a Claim Form.

## 8.    SERVICE AWARDS

8.1    Class Representatives and Class Counsel may seek Service Awards to the Class Representatives of up to $1,500 (One Thousand Five Hundred Dollars) per Class Representative. Class Counsel may file a motion seeking Service Awards for the Class Representatives on or before fourteen (14) days after the Objection Deadline.

8.2    The Settlement Administrator shall pay the Service Awards approved by the Court to the Class Representatives from the Settlement Fund. Such Service Awards shall be paid by the Settlement Administrator, in the amount approved by the Court, within five (5) Business Days after the Effective Date.

8.3    In the event the Court declines to approve, in whole or in part, the payment of the Service Award in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the Service Award shall constitute grounds for cancellation or termination of this Agreement.

8.4    The Parties did not discuss or agree upon the amount of the maximum amount of Service Awards for which Class Representatives can apply for, until after the substantive terms of the Settlement had been agreed upon.

## 9.    ATTORNEYS' FEES, COSTS, AND EXPENSES

9.1    Class Counsel may file a motion seeking an award of attorneys' fees of up to (33 1/3%) (thirty-three and one-third percent) of the Settlement Fund, and, separately, reasonably incurred litigation expenses and costs (i.e., Fee Award and Costs), no later than fourteen (14) days prior to the Objection Deadline. The motion for a Fee Award and Cost shall be posted on the Settlement Website. The Settlement Administrator shall pay any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel in the amount approved by the Court, from the Settlement Fund, within five (5) Business Days after the Effective Date.

9.2    Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves.

9.3    The Settlement is not conditioned upon the Court's approval of an award of Class Counsel's Fee Award and Costs or Service Awards.

## 10.    EFFECTIVE DATE, MODIFICATION, AND TERMINATION

10.1    The Effective Date of the Settlement shall be the first day after all of the following conditions have occurred:

(a)    Hope College and Class Counsel execute this Agreement;

(b)    The Court enters the Preliminary Approval Order attached hereto as **Exhibit E**, without material change;

(c)    Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d)    The Court enters the Final Approval Order and Judgment attached hereto as **Exhibit B** and **Exhibit C**, respectively, without material change; and

(e)    The Final Approval Order and Judgment have become "Final" because: (i) the time for appeal, petition, rehearing or other review has expired; or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

10.2    In the event that the Court declines to enter the Preliminary Approval Order, declines to enter the Final Approval Order and Judgment, or the Final Approval

22

Order and Judgment does not become Final (as described in Paragraph 10.1(e) of this Agreement), Hope College may at its sole discretion terminate this Agreement on five (5) Business Days written notice from Hope College's Counsel to Class Counsel.

10.3   In the event the terms or conditions of this Settlement Agreement are materially modified by any court, any Party in its sole discretion to be exercised within fourteen (14) days after such modification may declare this Settlement Agreement null and void. In the event of a material modification by any court, and in the event the Parties do not exercise their unilateral options to withdraw from this Settlement Agreement pursuant to this Paragraph, the Parties shall meet and confer within seven (7) days of such ruling to attempt to reach an agreement as to how best to effectuate the court-ordered modification. For the avoidance of doubt, a "material modification" shall not include any reduction by the Court of the Fee Award and Costs and/or Service Awards.

10.4   Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event the Settlement is terminated, any orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses.

10.5   In the event this Agreement is terminated pursuant to any provision herein, then the Settlement proposed herein shall become null and void (with the exception of Sections 3.11, 3.12, 3.13, 10.5, and 10.6 herein) and shall have no legal effect, and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

10.6   Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs.

## 11.   NO ADMISSION OF WRONGDOING OR LIABILITY

11.1   This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

    (a)    shall not be offered or received against Hope College as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Hope College with respect to the truth of any fact alleged by any Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Hope College;

    (b)    shall not be offered or received against Hope College as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Hope College;

    (c)    shall not be offered or received against Hope College as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against Hope College, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

    (d)    shall not be construed against Hope College as an admission or concession that the consideration to be given hereunder represents the relief that could be or would have been awarded after trial; and

    (e)    shall not be construed as or received in evidence as an admission, concession or presumption against the Class Representatives or any Class Member that any of their claims are without merit, or that any defenses asserted by Hope College have any merit.

## 12.    REPRESENTATIONS

12.1    Each Party represents that: (i) such Party has full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval; (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party; (iii) this Agreement constitutes a valid, binding, and enforceable agreement; and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

## 13.    NOTICE

13.1    All notices to Class Counsel provided for in this Agreement shall be sent by email (to all email addresses set forth below) and by First-Class mail to all of the following:

Benjamin F. Johns
**SHUB & JOHNS, LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
bjohns@shublawyers.com

13.2    All notices to Hope College or Hope College's Counsel provided for in this Agreement shall be sent by email and First Class mail to the following:

Jill Fertel
**CIPRIANI & WERNER, P.C.**
450 Sentry Parkway, Suite 200
Blue Bell, PA 19422
jfertel@c-wlaw.com

13.3    All notices to the Settlement Administrator provided for in this Agreement shall be sent by email and First Class mail to the following:

Epiq Class Action & Claims Solutions, Inc.
P.O. Box: *To be determined*
Address: *To be determined*
Email: *To be determined*

13.4    The notice recipients and addresses designated in this Section may be changed by written notice.

## 14.    MISCELLANEOUS PROVISIONS

14.1    <u>Representation by Counsel</u>. The Class Representatives and Hope College represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

14.2    <u>Best Efforts</u>. The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

14.3    <u>Contractual Agreement</u>. The Parties understand and agree that all terms of this Agreement, including the Exhibits thereto, are contractual and are not a mere recital, and each signatory warrants that he, she, or it is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that they or it represents.

14.4    <u>Integration</u>. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party

concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

14.5    <u>Drafting</u>. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys that was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties. The Parties expressly waive any otherwise applicable presumption(s) that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

14.6    <u>Modification or Amendment</u>. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the persons who executed this Agreement or their successors-in-interest.

14.7    <u>Waiver</u>. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

14.8    <u>Severability</u>. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

14.9    <u>Successors</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

14.10   <u>Survival</u>. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

14.11   <u>Governing Law</u>. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of Michigan, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

14.12   <u>Interpretation</u>.

(a)    Definitions apply to the singular and plural forms of each term defined.

(b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

26

(c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.13    <u>No Precedential Value</u>. The Parties agree and acknowledge that this Agreement carries no precedential value.

14.14    <u>Fair and Reasonable</u>. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of arm's-length negotiations with the assistance of an experienced mediator.

14.15    <u>Retention of Jurisdiction</u>. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

14.16    <u>Headings</u>. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

14.17    <u>Exhibits</u>. The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

14.18    <u>Counterparts and Signatures</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts. Digital signatures shall have the same force and effect as the original.

14.19    <u>Facsimile and Electronic Mail</u>. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

14.20    <u>No Assignment</u>. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

14.21    <u>Deadlines</u>. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

27

14.22  <u>Dollar Amounts</u>. All dollar amounts are in United States dollars, unless otherwise expressly stated.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

[*executed signatures on following page(s)*]

Date:                                                **SHUB & JOHNS LLC**

                                                     _____

                                                     Benjamin F. Johns


                                                     *Counsel for Plaintiffs*


                                                     **CIPRIANI & WERNER PC**

Dated:                                               _____

                                                     Jill H. Fertel

                                                     *Counsel for Defendant, Hope College*

14.22   Dollar Amounts. All dollar amounts are in United States dollars, unless otherwise expressly stated.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

[*executed signatures on following page(s)*]

Date:   9/8/23

**SHUB & JOHNS LLC**

Benjamin E. Johns

*Counsel for Plaintiffs*

**CIPRIANI & WERNER PC**

Dated:

_____

Jill H. Fertel

*Counsel for Defendant, Hope College*

28

14.22  <u>Dollar Amounts</u>. All dollar amounts are in United States dollars, unless otherwise expressly stated.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

[*executed signatures on following page(s)*]

Date:                                                          **SHUB & JOHNS LLC**

                                                        _____
Benjamin F. Johns

*Counsel for Plaintiffs*

**CIPRIANI & WERNER PC**

Dated:    September 8, 2023                 */s/ Jill H. Fertel (w/consent)*
Jill H. Fertel

*Counsel for Defendant, Hope College*

28

# Exhibit A

## CLAIM FORM AND RELEASE FOR HOPE COLLEGE DATA BREACH BENEFITS
**Hope College Data Breach Litigation**
(***In Re Hope College Data Security Breach Litigation***, Case No. 1:22-cv-01224 (W.D. Mich.))

**USE THIS FORM TO MAKE A CLAIM FOR CREDIT MONITORING AND INSURANCE SERVICES ("CMIS"), FOR A DOCUMENTED LOSS PAYMENT, OR FOR AN ALTERNATIVE CASH FUND PAYMENT**

**The DEADLINE to submit this Claim Form is postmarked: [XXXX XX, 2024]**

## I.    GENERAL INSTRUCTIONS

If you are an individual who was notified that your Personal Information was potentially compromised as a result of a data breach that occurred when files within Hope College' computer systems were accessed by an unauthorized person, access which included certain Hope College files that may have contained your Personal Information (the "Data Breach"), you are a Class Member.

As a Class Member, you are eligible to make a claim for **one (1) of the following options:**

      (1) twelve months of Credit Monitoring and Insurance Services;

        OR

      (2) up to a $5,000 cash payment for reimbursement of Documented Losses that are more likely than not a result of the Hope College Data Breach and not otherwise reimbursable by insurance ("Documented Loss Payment");

        OR

      (3) a *pro rata* Cash Fund Payment, the amount of which will depend on the number of Class Members who participate in the Settlement.

The Credit Monitoring and Insurance Services will include the following services, among others: (i) up to $1,000,000 of identity theft insurance coverage; and (ii) one year of three-bureau credit monitoring providing, among other things, notice of changes to the Class Member's credit profile. If you already subscribed to credit monitoring services through a previous offer of credit monitoring from Hope, or from another provider obtained as a result of the breach, you will have the option to postpone the commencement of the Credit Monitoring and Insurance Services by up to twelve (12) months for no additional charge.

Cash Fund Payments may be reduced or increased *pro rata* (equal share) depending on how many Class Members submit claims. Complete information about the Settlement and its benefits are available at www.xxxxxxxxxxxxxx.com.

**Please complete this Claim Form on behalf of the individual who received a notification from Hope College. If you are the parent of a minor(s) who received a data breach notification, please submit the form using the minor(s)'s personal information.**

This Claim Form may be submitted online at www.xxxxxxxxxxxxx.com or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

Hope College Data Breach Administrator

P.O. Box _____

_____, ___ _____-_____

## II. CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments and Credit Monitoring and Insurance Services, you must notify the Settlement Administrator in writing at the address above.

First Name                                            M.I.    Last Name

Alternative Name(s)

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                                State:        Zip Code:

Cellular Telephone Number              Home Telephone Numbers

Email Address

Date of Birth (mm/dd/yyyy)          Unique ID Number Provided on mailed Notice (if known)

## III.    CLASS MEMBERSHIP

☐ Please check this box if you received a notice related to this Class Action, and you have provided your Unique ID Number in Section II above.

☐ Please check this box if you have **not** received a letter notice but believe that you should be included in the Class. You must provide Reasonable Documentation demonstrating that you were impacted by the Hope College Data Breach and are a class member.

## IV.    CLAIMANT SELECTION OF SETTLEMENT OPTION

### You may select ONE of the following options:

### (1) CASH FUND PAYMENT

☐ If you wish to receive a Cash Fund Payment, you must check off the box for this section, and then simply return this Claim Form.

You will receive an email at the email address provided above after Final Approval prompting you to select how you would like to be paid. You can receive payment via a digital payment, or you can elect to receive a check.

**OR**

### (2) CREDIT MONITORING AND INSURANCE SERVICES

☐ If you wish to receive Credit Monitoring and Insurance Services, you must check off the box for this section, provide your email address in the space provided in Section II, above, and return this Claim Form. Submitting this Claim Form will not automatically enroll you into Credit Monitoring and Insurance Services. To enroll, you must follow the instructions sent to your email address after the Settlement is approved and becomes final (the "Effective Date").

**OR**

### (3) REIMBURSEMENT FOR DOCUMENTED LOSSES

☐ Please check off this box for this section if you are electing to seek reimbursement for up to $5,000 of Documented Losses you incurred that are more likely than not traceable to the Hope College Data Breach and not otherwise reimbursable by insurance. Documented Losses include unreimbursed losses and consequential expenses that are more likely than not related to the Hope College Data Breach and incurred on or after September 27, 2022.

In order to make a claim for a Documented Loss Payment, **you must** (i) fill out the information below and/or on a separate sheet submitted with this Claim Form; (ii) sign the attestation at the end of this Claim Form (section VI); and (iii) include Reasonable Documentation supporting each claimed cost along with this Claim Form. Documented Losses need to be deemed more likely than not due to the Hope College Data Breach by the Settlement Administrator based on the documentation you provide and the facts of the Hope College Data Breach. **Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ○ Unreimbursed fraud losses or charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges* |
| ○ Professional fees incurred in connection with identity theft or falsified tax returns | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return* |
| ○ Lost interest or other damages resulting from a delayed state | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Examples: Letter from IRS or state about tax fraud in your name; Documents reflecting length of time you waited to receive your tax* |

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| and/or federal tax refund in connection with fraudulent tax return filing | | | *refund and the amount* |
| ○ Credit freeze | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Examples: Notices or account statements reflecting payment for a credit freeze* |
| ○ Credit monitoring that was ordered after December 15, 2022, through the date on which the Credit Monitoring and Insurance Services become available through this Settlement | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring and insurance services* |
| ○ Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long- distance telephone charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Example: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office), indication of why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the Hope College Data Breach* |
| ○ Other (provide detailed description) | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Please provide detailed description below or in a separate document submitted with this Claim Form* |

**If you do not submit Reasonable Documentation supporting a Documented Loss Payment claim, or your claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason and you do not cure the defect, your claim will be considered for a Cash Fund Payment.**

## V. CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments are true and correct. I further submit to the jurisdiction of the Court with respect to my claim and for purposes of enforcing the releases set forth in any Final Judgment that may be entered in the Action.

I acknowledge that, as of the Effective Date of the Settlement, pursuant to the terms set forth in the Settlement Agreement, and by operation of law and the Final Judgment, I shall be deemed to release and forever discharge and shall be forever enjoined from prosecuting any claims relating to the Data Breach and the Released Claims against Hope College and the Released Parties (as more fully defined in the Settlement Agreement and/or Final Judgment).

I declare under penalty of perjury under the laws of the jurisdiction where I reside that the foregoing is true and correct. I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me.  I also understand that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim and the determinations of the Settlement Administrator.


_____          Date:_____

Signature:


_____

Print Name

## VI. ATTESTATION
### (REQUIRED FOR DOCUMENTED LOSS PAYMENT CLAIMS ONLY)

I, _____, declare that I suffered the Documented Losses claimed above.
      [Name]

I also attest that the Documented Losses claimed above are accurate and were not otherwise reimbursable by insurance.

I declare under penalty of perjury under the laws of my state of residence that the foregoing is true and correct. Executed on _____, in _____, _____.
         [Date]           [City]        [State]

_____
      [Signature]

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE HOPE COLLEGE DATA SECURITY BREACH LITIGATION | Case No. 1:22-cv-01224<br><br>CLASS ACTION<br><br>HON. PAUL L. MALONEY |

## ORDER GRANTING FINAL APPROVAL

WHEREAS, on _____, 2023, a Preliminary Approval Order was entered by the Court preliminarily approving the proposed Settlement pursuant to the terms of the Parties' Settlement Agreement, and directing that Notice be given to the Settlement Class.

WHEREAS, pursuant to the notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the Settlement Class was notified of the terms of the proposed Settlement, of the right of members of the Settlement Class to object or opt-out, and of the right of members of the Settlement Class to be heard at a Final Approval Hearing to determine, *inter alia*: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement; and (2) whether the Final Approval Order and Judgment should be entered dismissing this Action with prejudice;

WHEREAS, a Final Approval Hearing was held on _____, 2024. Settlement Class Members were notified of their right to appear at the Final Approval Hearing in support of or in opposition to the proposed Settlement, the award of attorney's fees, costs, and expenses to Class Counsel, and requested Service Awards to Class Representatives.

NOW, THEREFORE, the Court having heard the presentation of Settlement Class Counsel and counsel for Defendant, having reviewed all of the submissions presented with respect to the

proposed Settlement, having determined that the Settlement is fair, reasonable, and adequate, having considered the application for attorney's fees, expenses, and costs made by Settlement Class Counsel and the application for Service Awards to the Class Representatives, and having reviewed the materials in support thereof, and good cause appearing:

**THIS COURT FINDS AND ORDERS AS FOLLOWS:**

1.      This Final Approval Order hereby incorporates by reference the definitions in the Settlement Agreement and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.      For purposes only of the settlement of the Released Claims as to the Released Parties set forth in the Settlement Agreement (the "Settlement"), the Court hereby finally certifies the Settlement Class, as defined in the Court's _____, 2023 Preliminary Approval Order (ECF No. __). Based on the record, the Court reconfirms the applicable provisions of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for purposes only of the Settlement.

3.      In so holding, the Court finds that, solely for purposes of settlement, the Settlement Class meets all of the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3).

4.      The Court hereby finds, in the specific context of this Settlement, that: (i) the Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable, Fed. R. Civ. P. 23(a)(l); (ii) common questions of law and fact exist with regard to the Settlement Class, Fed. R. Civ. P. 23(a)(2); (iii) Plaintiffs' claims in this litigation are typical of those of Settlement Class Members, Fed. R. Civ. P. 23(a)(3); and (iv) Plaintiffs' interests do not conflict with, and are coextensive with, those of absent Settlement Class Members, all of whose claims arise from the identical factual predicate, and Plaintiffs and Settlement Class Counsel have adequately represented the interests of all Settlement Class Members, Fed. R. Civ. P. 23(a)(4).

5.      The Court also finds that common issues of fact and law predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Fed. R. Civ. P. 23(b)(3).

6.      This Court has personal jurisdiction over Plaintiffs, Hope College (in this Action only and for purposes of this Settlement), and all Settlement Class Members and subject matter jurisdiction over the Action to approve the Settlement Agreement and all exhibits attached thereto under 28 U.S.C. § 1332(d)(2).

7.      The Court finds that the Class Notice, website, and Notice Plan implemented pursuant to the Settlement Agreement and the Court's Preliminary Approval Order: (a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action, of their right to exclude themselves from or object to the proposed Settlement, of their right to appear at the Final Approval Hearing, of Plaintiffs Counsel's application for an award of attorneys' fee and expenses, and of Plaintiffs' application for a Service Award associated with the Action; (c) provided a full and fair opportunity to all Settlement Class Members to be heard with respect to the foregoing matters; and (d) met all applicable requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable rules or law.

8.      There are ___ objections and ___ request for exclusion (i.e., opt-outs) to the Settlement. Any Settlement Class Members who timely and properly opted out from the settlement are identified in Exhibit ___.

9.      The Settlement Class, which will be bound by this Final Approval Order, shall include all members of the Settlement Class who did not submit timely and valid requests to be excluded from the Settlement Class.

10.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally approves the Settlement, as set forth in the Settlement Agreement.

11.     This Court finds that the Settlement meets all requirements of Rule 23(e) of the Federal Rules of Civil Procedure and is, in all respects, fair, reasonable and adequate, and in the best interests of the Settlement Class, including Plaintiffs.

12.     This Court further finds that the Settlement set forth in the Settlement Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Parties, that Settlement Class Counsel and Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Settlement Agreement, that the relief provided for the Settlement Class is adequate, and that the Settlement Agreement treats Settlement Class Members equitably relative to each other.

13.     Accordingly, the Settlement embodied in the Settlement Agreement is hereby approved in all respects. The Parties are hereby directed to carry out the Settlement Agreement in accordance with all of its terms and provisions, including the termination provisions.

14.     Notwithstanding the entry of this Final Approval Order, if the Settlement Agreement is validly terminated by Plaintiffs or Hope College, is disapproved or materially modified in whole or in part by the Court, any appellate court, or any other court of review, or does not become final, then the provisions of this Final Approval Order dismissing Plaintiffs' claims shall be null and void with respect to such Settlement; Plaintiffs' claims shall be reinstated; Hope College's defenses shall be reinstated; the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, including but not limited to any requests for exclusion from the Settlement previously submitted and deemed to be valid, shall be vacated and be of no force and effect; the Settlement Agreement, including its exhibits, and any

and all negotiations, documents, and discussions associated with it and the releases set forth herein, shall be without prejudice to the rights of any Party, and of no force or effect; and the Parties shall be returned to their respective positions as of the Execution Date of the Settlement Agreement. Notwithstanding the language in this Paragraph, any provision(s) in the Settlement Agreement that the Parties have agreed shall survive its termination shall continue to have the same force and effect intended by the Parties.

15.     The Escrow Account defined in the Settlement Agreement shall be established as a trust and as a fiduciary account (the "Settlement Fiduciary Account"). The Court approves the establishment of the Settlement Fiduciary Account under the Settlement Agreement as a qualified settlement fund pursuant to Section 468B of the Internal Revenue Code of 1986, and the Treasury Regulations promulgated thereunder.

16.     Without affecting the finality of the Final Approval Order for purposes of appeal, the Court reserves exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement and the Settlement contemplated thereby and over the enforcement of this Final Approval Order. The Court also retains exclusive jurisdiction over the Settlement, the Settlement Agreement, enforcement of Court orders relating to the Settlement and the Settlement Agreement, and the administration and consummation of the Settlement.

17.     In addition, without affecting the finality of this Final Approval Order, Plaintiffs, Hope College, and the Settlement Class hereby irrevocably submit to the exclusive jurisdiction of the U.S. District Court for the Western District of Michigan for any suit, action, proceeding, or dispute arising out of or relating to this Final Approval Order or the Settlement Agreement. Any disputes involving Plaintiffs, Hope College, or Settlement Class Members concerning the implementation of the Settlement Agreement shall be submitted to the Court.

18.     Each Settling Class Member must execute a release and covenant not to sue in conformity with the Settlement Agreement, set forth in the Claim Form and Release, in order to receive any Settlement Relief defined in the Settlement Agreement. Notwithstanding the foregoing, each Settling Class Member's claim shall be released pursuant to Section 4 of the Settlement Agreement, regardless of whether the Settling Class Member executes a release and covenant not to sue pursuant to this paragraph.

19.     The Court hereby confirms the appointment of Benjamin F. Johns of Shub & Johns LLC as Settlement Class Counsel.

20.     The Court hereby confirms the appointment of Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter as Class Representatives.

21.     The Court hereby confirms the appointment of Epiq Class Action & Claims Solutions, Inc. and/or its affiliate Hilsoft Notifications as Settlement Administrator.

22.     The Court hereby approves the Releasing Parties' release of their Released Claims as set forth in the Settlement Agreement and this Final Approval Order as of the Effective Date.[1]

---

[1] The release under the Settlement Agreement, Section 4, provides as follows: Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members identified in the settlement class list in accordance with Section 6.4, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Breach or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

  
23.    As of the Effective Date as defined in the Settlement Agreement, the release set forth in the Settlement Agreement shall be binding upon Plaintiffs, the Settlement Class, and the Releasing Parties as to Hope College and the Released Parties.

24.    The Court declares that the Settlement Agreement and the Final Approval Order shall be binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings against Hope College involving Released Claims(s), and shall also be binding on the Releasing Parties and their respective successors and assigns, regardless of whether the Releasing Party previously initiated or subsequently initiates individual litigation or other proceedings involving the Released Claims, and even if such Releasing Party never received actual notice of the Action or the Settlement.

25.    The Court permanently bars and enjoins Releasing Parties from: (a) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction against Hope College or any of the Released Parties based on the Released Claims; (b) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), against Hope College or any of the Released Parties based on the Released Claims; or (c) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) against Hope College or any of the Released Parties based on the Released Claims.

26.    Neither the Settlement Agreement (nor its exhibits), whether or not it shall become final, nor any negotiations, documents exchanged among Class Counsel and Hope College in connection with settlement discussions, and discussions associated with them, nor the Final Approval Order and Final Judgment are or shall be deemed or construed to be an admission, adjudication, or evidence of: (a) any violation of any statute or law or of any liability or wrongdoing by Hope College or any Released Party; (b) the truth of any of the claims or allegations alleged in the Action; (c) the incurrence of any damage, loss, or injury by any Person; or (d) the propriety of certification of a class other than solely for purposes of the Settlement. Further, the Settlement negotiations, including any documents exchanged among Settlement Class Counsel and Hope College and any discussions associated with them, may not be discoverable, offered or received in evidence, or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding of any nature, by any Person, except if warranted by existing law in connection with a dispute under the Settlement Agreement or an action (including this Action) in which the Settlement Agreement is asserted as a defense.

27.    The Parties, without the need for approval from the Court, may adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits thereto as (i) shall be consistent in all material respects with the Final Approval Order; and (ii) do not limit the rights of Settling Class Members.

28.    Any data or other information provided by Settlement Class Members in connection with the submission of claims shall be held in strict confidence, available only to the Settlement Administrator, Class Counsel, Hope College's Counsel and experts or consultants acting on behalf of the Settlement Class. In no event shall a Settlement Class Member's data or personal

information be made publicly available, except as provided for herein or upon Court Order for good cause shown.

      29.    The Claim Form and Release referenced in the Settlement Agreement in Section 7.1(a) & exhibit A thereto is approved as fair, reasonable, and adequate.

      30.    Settlement Class Counsel's request for attorneys' fees and expenses and Plaintiffs' application for Service Awards shall be the subject of a separate order by the Court.

      31.    Should any remaining amount of the Net Settlement Fund be economically not distributable, the Parties shall petition the Court for permission to distribute the remaining funds to an approved non-profit recipient, providing the Court with details of the proposed non-profit recipient.

**SO ORDERED** this _____ day of _____, _____.


_____
HON. PAUL L. MALONEY
United States District Judge

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE HOPE COLLEGE DATA SECURITY BREACH LITIGATION | Case No. 1:22-cv-01224<br><br>CLASS ACTION<br><br>HON. PAUL L. MALONEY |

**FINAL JUDGMENT AND ORDER OF DISMISSAL**

After conducting a final approval hearing on _____, the Court granted Plaintiffs' motion for final approval of the Class Action Settlement with Hope College, and Plaintiffs' motion for an award of attorney's fees, costs, and payment of Service Awards to the Settlement Class Representatives.  Judgment is hereby **ENTERED**.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      This Final Judgment hereby incorporates by reference the definitions in the Settlement Agreement with Hope College dated _____ (the "Settlement Agreement"), and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.      The Court finds that it has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) to enter this Final Judgment and that it has personal jurisdiction over Plaintiffs, Hope College (in this Action only and for purposes of this Settlement), and all Settlement Class Members.

3.      Upon the Settlement Agreement becoming effective in accordance with its terms, all of the following claims shall be released. Specifically, per Section 4 of the Settlement Agreement:

> Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class

1

Members identified in the settlement class list in accordance with Section 6.4, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Breach or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

4.     The Action and all Released Claims against Hope College and the Released Parties are hereby dismissed with prejudice and without fees or costs, other than as specified in the Settlement Agreement, including those costs of Notice and administration; Service Awards to the Class Representatives; and Attorneys' Fee Award and Costs.

5.     The Court, finding no just reason for delay, directs pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that the judgment of dismissal as to Hope College shall be final and entered forthwith.

**SO ORDERED** this _____ day of _____, _____.

_____
HON. PAUL L. MALONEY
United States District Judge

2

# Exhibit D

*Hope College Data Breach Litigation*
(***In Re Hope College Data Security Breach Litigation**, Case No. 1:22-cv-01224 (W.D. Mich.))*

# Notice of Hope College Data Breach Class Action Settlement

*This is <u>not</u> a solicitation from a lawyer. This is a Court approved Notice.*
*Please read this Notice carefully and completely.*

### <u>THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY.</u>

- A proposed Settlement arising out of a data breach has been reached with Hope College. On September 27, 2022, an unauthorized user was able to access files within Hope College's computer systems (the "Data Breach"). As a result, Personal Information may have been accessed. Impacted Personal Information may have included names, dates of birth, Social Security numbers, driver's license numbers, and student ID numbers. If you were notified by Hope College that your Personal Information may have been compromised because of the Hope College Data Breach, you are included in this Settlement as a member of the Settlement Class.

- Under the Settlement, Hope College has agreed to establish a $1,500,000.00 Settlement Fund to: (1) pay for one year of credit monitoring and insurance services ("Credit Monitoring and Insurance Services" or "CMIS"); or (2) provide reimbursement of up to $5,000 per Class Member for Class Members who incurred certain Documented Losses ("Documented Loss Payment"); or (3) provide cash payments to Class Members ("Cash Fund Payment"). The Settlement Fund will also be used to pay for the costs of the settlement administration, court-approved Service Awards for named Plaintiffs, and the Fee Award and Costs. In addition, Hope College has agreed to undertake certain remedial measures and enhanced security measures that they will continue to implement.

- Your legal rights will be affected whether you act or do not act. <u>You should read this entire Notice carefully.</u>

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM FORM**<br><br>DEADLINE: [xxxx xx, 2024] | Submitting a Claim Form is the only way that you can receive any of the monetary Settlement Benefits provided by this Settlement, including Credit Monitoring and Insurance Services, a Documented Loss Payment, or a Cash Fund Payment.<br><br>If you submit a Claim Form, you will give up the right to sue Hope College and certain Released Parties in a separate lawsuit about the legal claims this Settlement resolves. |
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT**<br><br>DEADLINE: [xxxx xx, 2024] | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Hope College, or certain Released Parties (as defined in the Settlement Agreement), for the claims this Settlement resolves.<br><br>If you exclude yourself, you will give up the right to receive any Settlement Benefits from this Settlement. |
| **OBJECT TO OR COMMENT ON THE SETTLEMENT**<br><br>DEADLINE: [xxxx xx, 2024] | You may object to the Settlement by writing to the Court and informing it why you do not think the Settlement should be approved. You can also write the Court to provide comments or reasons why you support the Settlement. You will still be bound by the Settlement if it is approved, and you will not be allowed to exclude yourself from the Settlement.<br><br>If you object, you may also file a Claim Form to receive Settlement Benefits, but you will give up the right to sue Hope College and Released Parties in a separate lawsuit about the legal claims this Settlement resolves. |
| **GO TO THE "FINAL APPROVAL" HEARING**<br><br>DATE: xxxx xx, 2024 | You may attend the Final Approval Hearing where the Court may hear arguments concerning approval of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. You are <u>not</u> required to attend the Final Approval Hearing. |
| **DO NOTHING** | If you do nothing, you will not receive any of the monetary Settlement Benefits and you will give up your rights to sue Hope College and certain Released Parties for the claims this Settlement resolves. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement Benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

## BASIC INFORMATION

**1.      Why did I get this Notice?**

A court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The case is known as *In Re Hope College Data Security Breach Litigation*, Case No. 1:22-cv-01224 (W.D. Mich.), before Judge Paul L. Maloney. The people who filed this lawsuit are called the "Plaintiffs" and the entity they sued, Hope College, is called the "Defendant." The Plaintiffs and the Defendant agreed to this Settlement.

**2.      What is this lawsuit about?**

On September 27, 2022, an unauthorized user was able to access files stored on Hope College's computer systems. As a result, Personal Information of individuals may have been accessed (the "Data Breach"). Impacted Personal Information may have included names, dates of birth, Social Security numbers, driver's license numbers, and student ID numbers. After conducting a thorough investigation, Hope College began notifying individuals of the Data Breach on or about December 15, 2022.

The Plaintiffs claim that Hope College failed to adequately protect their Personal Information and that they were injured as a result. Hope College denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that the law has been violated. Hope College denies these and all other claims made in the Action. By entering into the Settlement, Hope College is not admitting that it did anything wrong.

**3.      Why is this a class action?**

In a class action, one or more people called the Class Representatives sue on behalf of all people who have similar claims. Together all of these people are called a Class or Class Members. One court resolves the issues for all Class Members, except for those Class Members who exclude themselves from the Class.

The Class Representatives in this case are Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter.

**4.      Why is there a Settlement?**

The Class Representatives and Hope College do not agree about the claims made in this Action. The Action has not gone to trial, and the Court has not decided in favor of the Class Representatives or Hope College. Instead, the Class Representatives and Hope College have agreed to settle the Action. The Class Representatives and the attorneys for the Class ("Class Counsel") believe the Settlement is best for all Class Members because of the risks and uncertainty associated with continued litigation and the nature of the defenses raised by Hope College.

## WHO IS INCLUDED IN THE SETTLEMENT

**5.      How do I know if I am part of the Settlement?**

The Court has decided that everyone who fits the following description is a Class Member:

> All natural persons whose Personal Information was compromised in the Data Breach that was discovered by Hope College on or around September 27, 2022.

If you were notified by Hope College that your Personal Information may have been compromised because of the Hope College Data Breach, you are included in this Settlement as a member of the Settlement Class. If you received this Notice of Settlement by mail, you may be a Class Member and your legal rights may be affected by this Settlement.  If you did not receive Notice by mail, or if you have any questions as to whether you are a Class Member, you may contact the Settlement Administrator.

**6.      Are there exceptions to individuals who are included as Class Members in the Settlement?**

Yes, the Settlement does not include: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Hope College, its employees, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

**7.      What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Class Member, you may go to the Settlement Website at www.xxxxxxxxx.com, or call the Settlement Administrator's toll-free number at 1-XXX-XXX-XXXX.

**Questions? Go to www.xxxxxxxxxxxxxxx.com or call 1-XXX-XXX-XXXX**
**This Settlement affects your legal rights even if you do nothing.**

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.      What does the Settlement provide?**

The Settlement will provide Class Members with the opportunity to select and make a claim for one the following Settlement Benefits, which are discussed in further detail below:

(A) One year of Credit Monitoring and Insurance Services ("CMIS");

**OR**

(B) Cash payments of up to $5,000 per Class Member for reimbursement of certain Documented Losses ("Documented Loss Payment");

**OR**

(C) Class Members may elect to receive *pro rata* Cash Fund Payments in amounts to be determined in accordance with the terms of Section 3.2(c) of the Settlement Agreement. The amounts of these payments are unknown at this time, but will be calculated based upon how many Class Members submit claims for Credit Monitoring or reimbursement of Documented Losses.

In addition, Hope College has agreed to take certain remedial measures and enhanced security measures as a result of this Action, as detailed in Number 10 below & Section 2 of the Settlement Agreement.

Please review Number 12 carefully for additional information regarding the order in which Settlement Benefits are paid from the Settlement Fund. This additional information may impact your decision as to which of the three Settlement Benefit options is the best option for you.

### A.   Credit Monitoring and Insurance Services.

You may file a Claim Form to receive Credit Monitoring and Insurance Services. Credit Monitoring and Insurance Services provide a way to protect yourself from unauthorized use of your personal information. If you already have credit monitoring services, you may still sign up for this additional protection. The Credit Monitoring and Insurance Services provided by this Settlement are separate from, and in addition to, the credit monitoring and identity resolution services that may have been offered to you by Hope College in response to the Data Breach. You are eligible to make a claim for the Credit Monitoring and Insurance Services being offered through this Settlement even if you did not sign up for the previous services. If you file a claim for Credit Monitoring and Insurance Services and you already have credit monitoring services, you can choose to postpone the Credit Monitoring and Insurance Services from this Settlement for a period of 12 months.

Credit Monitoring and Insurance Services include: (i) up to $1 million dollars of identity theft insurance coverage; and (ii) three bureau credit monitoring.

To receive Credit Monitoring and Insurance Services, you must submit a completed Claim Form selecting to receive Credit Monitoring and Insurance Services.

### B.   Documented Loss Payment.

In the alternative to Credit Monitoring and Insurance Services, you may elect to submit a Claim Form for reimbursement of Documented Losses. If you spent money remedying or addressing identity theft and fraud that was more likely than not related to the Hope College Data Breach or you spent money to protect yourself from future harm because of the Hope College Data Breach, you may make a claim for a Documented Loss Payment for reimbursement of up to $5,000 in Documented Losses.

Documented Losses consist of unreimbursed losses incurred on or after September 27, 2022, that were related to identity theft and fraud and are more likely than not a result of the Hope College Data Breach, as well as any expenses related to the Hope College Data Breach. For example, credit card or debit card cancellation or replacement fees, late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, credit-related costs associated with purchasing credit reports, credit monitoring or identity theft protection, costs to place a freeze or alert on credit reports, costs to replace a driver's license, state identification card, Social Security number, professional services, and out-of-pocket expenses for notary, fax, postage, delivery, copying, mileage, and long-distance telephone charges. Other losses or costs related to the Hope College Data Breach that are not insurance reimbursable may also be eligible for reimbursement. To protect the Settlement Fund and valid claims, all Claim Forms submitted that seek payment related to credit or debit card fraudulent transactions will be carefully scrutinized by the Settlement Administrator.

Claims for Documented Loss Payments must be supported by Reasonable Documentation. Reasonable Documentation means written documents supporting your claim, such as credit card statements, bank statements, invoices, telephone records, and receipts.

Individual payments for Documented Losses may be reduced or increased depending on the number of Class Members that participate in the Settlement.

To receive a Documented Loss Payment, you must submit a completed Claim Form electing to receive a Documented Loss Payment. If you file a Claim Form for a Documented Loss Payment and it is rejected by the Settlement Administrator and you do not correct it, and you have not otherwise claimed Credit Monitoring and Insurance Services, your Claim Form will be considered as an alternative claim for a Cash Fund Payment.

### C. Cash Fund Payment.

In the alternative to Credit Monitoring and Insurance Services or Documented Loss Payment, you may elect to receive a cash payment. This is the "Cash Fund Payment." The amount of the Cash Fund Payment will vary depending on the number of valid claims that are submitted. To receive a Cash Fund Payment, you must submit a completed Claim Form electing to receive a Cash Fund Payment.

You are not required to provide Reasonable Documentation with your Claim Form to receive a Cash Fund Payment. Individual Cash Fund Payments may be reduced or increased *pro rata* (equal share) depending on the number of Class Members that participate in the Settlement and the amount of money that remains in the Cash Fund after payments of other Settlement Benefits and charges with priority for payment under the Settlement. *See* Number 9 below.

**9.      How will Settlement Benefits be paid?**

Before determining which Settlement Benefit option from the Settlement is best for you (selecting a Cash Fund Payment, Credit Monitoring and Insurance Services, or Documented Loss Payment), it is important for you to understand how Settlement payments will be made. Court awarded attorneys' fees up to a maximum of one-third (1/3) of the $1,500,000.00 Settlement Fund, reasonable costs and expenses incurred by attorneys for the Class (referred to collectively as Fee Award and Costs), Administrative Expenses for costs of the settlement administration, and Service Awards of up to $1,500 to each of the Class Representatives will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts. The remainder of the Settlement Fund will be distributed in the following order:

1.  Credit Monitoring and Insurance Services claims will be paid first.
2.  If money remains in the Settlement Fund after paying for the Credit Monitoring and Insurance Services, Documented Loss Payment claims will be paid second. If your claim for a Documented Loss Payment is rejected by the Settlement Administrator and you do not cure it, and you have not otherwise made a claim for Credit Monitoring and Insurance Services, your claim for a Documented Loss Payment will instead be considered a claim for a Cash Fund Payment.
3.  Approved Cash Fund Payments. If money remains in the Settlement Fund after paying Credit Monitoring and Insurance Services claims and Documented Loss Payment claims, the amount of the Settlement Fund remaining will be used to create a "Post CMIS/DL Net Settlement Fund," which will be used to pay all Cash Fund Payment claims. The value of the Cash Fund Payments are unknown at this time, but will be calculated by subtracting from the Settlement Fund the amounts paid for valid claims for Credit Monitoring and Insurance Services and Documented Loss Payments, and after those expenses are deducted, the Post CMIS/DL Net Settlement Fund will be divided pro rata to individuals with approved claims for Cash Fund Payments.

**10.     Tell me more about Hope College's remedial measures and enhanced security measures.**

As a result of the Action, for a period of at least three (3) years from the Effective Date of this Agreement, Hope College has agreed to institute policies, procedures, and additional security-related remedial measures, including:

(a)  Hope College has increased its internal and third-party Information Technology professionals, including a newly employed System Manager for Servers with specialized training in Information Security. Hope College has greatly increased its use of contracted database administrators and application specialists with significant expertise in the specific data systems utilized by the College to train and augment the efforts of Hope College's IT staff.

(b)  Hope College has established a data governance committee. The committee's goals include a commitment to retain sensitive data only when legally required or operationally necessary. An initial round of data analysis and deletion has been completed as of the date of this writing.

(c)  Hope College has enforced mandatory multi-factor authentication for: all email accounts; the self-service portal (accessing direct deposit changes, class schedules, grades, etc.) Hope College continues to work to identify every system that can support multi-factor authentication and enable the same whenever possible.

(d)  Hope College has updated its enterprise data loss prevention rules to continue to block personal information from leaving the organization through email or shared documents.

(e)   Hope College has reviewed and revised its enterprise firewall rules in an effort to increase its resistance to external access.

(f)   Hope College has hired an independent security contractor to perform both external penetration testing and an internal vulnerability scan. An additional vendor will be hired in late 2023 to make an independent risk assessment of the IT/network infrastructure.

(g)   Hope College has hired an independent contractor to perform remote monitoring and management to facilitate system scanning, reporting, and patch management for its on-site server environment.

(h)   Hope College has increased its mandatory training, with all employees required to take Cybersecurity Overview, Email and Messaging Safety, and Password Security Basics courses. All employees are also required to complete training detailing the confidentiality of student records pursuant to the Family Educational Rights and Privacy Act (FERPA). Employees with access to sensitive information such as IT employees, employees with access to banking information, and employees with access to personally identifiable information are required to take additional courses specific to their respective levels of access. Participation is scrutinized and enforced and all participants must complete an assessment to demonstrate comprehension.

## 11.    What is the total value of the Settlement?

The Settlement provides a $1,500,000 Settlement Fund, and, additionally, remedial actions will be taken by Hope College for the benefit of the Class. Any court-approved Fee Award and Costs, Service Awards to the Class Representatives, taxes due on any interest earned by the Settlement Fund, if necessary, and any notice and settlement administration expenses will be paid out of the Settlement Fund, and the balance ("Net Settlement Fund") will be used to pay for the above Settlement Benefits. Any costs associated with Hope College's remedial and enhanced security measures will be paid by Hope College in addition to the Settlement Fund.

## 12.    What am I giving up to get a Settlement Benefit or stay in the Class?

Unless you exclude yourself, you are choosing to remain in the Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against Hope College and the Released Parties about the legal issues in this Action, resolved by this Settlement and released by the Class Action Settlement Agreement and Release. The specific rights you are giving up are called Released Claims (*see* next question).

## 13.    What are the Released Claims?

In exchange for the Settlement, Class Members agree to release Hope College and their respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing ("Released Parties") from any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined in the Settlement Agreement), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted on behalf of the Settlement Class in the Action related to or arising from the compromise of any Class Member's Personal Information arising out of the Hope College Data Breach, regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action. ("Released Claims"). "Released Parties" expressly includes, but is not limited to Hope College and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of its past, present, and future officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party." "Released Claims" do not include any claims against any entity other than Released Parties.

The Class Representatives and all Settlement Class Members, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Hope College Data Breach or otherwise arises out of the same facts and circumstances set forth in the Consolidated Class Action Complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any unidentified third party.

More information is provided in the Class Action Settlement Agreement and Release which is available at www.xxxxxxxxxxxxxxxx.com.

## HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

**14.    How do I make a claim for Settlement Benefits?**

You must complete and submit a Claim Form by **xxxx xx, 2024**. Claim Forms may be submitted online at www.xxxxxxxxxxxxx.com, or printed from the website and mailed to the Settlement Administrator at the address on the form. Claim Forms are also available by calling 1-XXX-XXX-XXXX or by writing to Hope College Data Breach Administrator, P.O. Box ____, _____, __ _____-____. The quickest way to file a claim is online.

If you received a Notice by mail, use your Claim Number to file your Claim Form. If you lost or do not know your Claim Number, please call 1-XXX-XXX-XXXX to obtain it.

You may submit a claim for either: (a) a Cash Fund Payment, **OR** (b)  a claim for Credit Monitoring and Insurance Services, **OR** (c) Documented Loss Payment by submitting a Claim Form on the Settlement Website, or by downloading, printing, and completing a Claim Form, and mailing it to the Settlement Administrator. You may only select one form of Settlement Relief.

**15.    How do I make a claim for a Cash Fund Payment?**

To file a claim for a Cash Fund Payment, you must submit a valid Claim Form electing to receive the Cash Fund Payment. To submit a claim for a Cash Fund Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2024.**

If you wish to receive your payment via digital payment method options instead of a check, simply provide your email address (optional). Anyone who submits a valid claim for Cash Fund Payment and does not elect to receive a digital payment, will receive their payment via regular check sent through U.S. Mail.

Instructions for filling out a claim for a Cash Fund Payment are included on the Claim Form. You may access the Claim Form at www.xxxxxxxxxxxxxx.com.

The deadline to file a claim for a Cash Fund Payment is **xxxx xx, 2024**. Claims must be filed or postmarked if mailed by this deadline.

**16.    How do I make a claim for Credit Monitoring and Insurance Services?**

To file a claim for Credit Monitoring and Insurance Services, you must submit a valid Claim Form electing to receive Credit Monitoring and Insurance Services. To submit a claim for Credit Monitoring and Insurance Services, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 202X.**

Instructions for filling out a claim for Credit Monitoring and Insurance Services are included on the Claim Form. You may access the Claim Form at www.xxxxxxxxxxxxxx.com.

The deadline to file a claim for Credit Monitoring and Insurance Services is **xxxx xx, 2024.** Claims must be filed or postmarked if mailed by this deadline

**17.    How do I make a claim for a Documented Loss Payment for reimbursement?**

To file a claim for a Documented Loss Payment of up to $5,000 for reimbursement of Documented Losses, you must submit a valid Claim Form electing to receive a Documented Loss Payment. To submit a claim for a Documented Loss Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2024.**

The Claim Form requires that you sign the attestation regarding the information you provided <u>and</u> that you include Reasonable Documentation, such as credit card statements, bank statements, invoices, telephone records, and receipts.

If your claim for a Documented Loss Payment is rejected by the Settlement Administrator and you do not correct it, and you do not otherwise make a claim for Credit Monitoring and Insurance Services, your claim for a Documented Loss Payment will instead be considered a claim for a Cash Fund Payment.

Instructions for filling out a claim for a Documented Loss Payment are included on the Claim Form. You may access the Claim Form at www.xxxxxxxxxxxxxxx.com.

The deadline to file a claim for a Documented Loss Payment is **xxxx xx, 2024.** Claims must be filed (or postmarked if mailed) by this deadline.

**Questions? Go to www.xxxxxxxxxxxxxxx.com or call 1-XXX-XXX-XXXX**
**This Settlement affects your legal rights even if you do nothing.**

**18.    What happens if my contact information changes after I submit a claim?**

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-XXX-XXX-XXXX or by writing to:

Hope College Data Breach Administrator

P.O. Box ____

_____, __ ____-____

**19.    When and how will I receive the Settlement Benefits I claim from the Settlement?**

If you make a valid claim for Credit Monitoring and Insurance Services, the Settlement Administrator will send you information on how to activate your credit monitoring after the Settlement becomes final. If you received a notice in the mail, keep it in a safe place as you will need the unique Claim Number provided on the Notice to activate your Credit Monitoring and Insurance Services.

Payment for valid claims for a Cash Fund Payment or a Documented Loss Payment will be provided by the Settlement Administrator after the Settlement is approved and becomes final. You may elect to receive payment for valid claims for a Cash Fund Payment or Documented Loss Payment via PayPal, Venmo, or digital payment instead of a check, by submitting your e-mail address with your Claim Form. Anyone who does not elect to receive payment via digital payment, will receive their payment via regular check sent through U.S. Mail.

The approval process may take time. Please be patient and check www.xxxxxxxxxxxxxxx.com for updates.

**20.    What happens if money remains after all of the Settlement Claims are paid?**

None of the money in the $1,500,000.00 Settlement Fund will ever be paid back to Hope College. Any money left in the Settlement Fund after 120 days after the distribution of payments to Class Members will be distributed *pro rata* (equal share) among all Class Members with approved claims for Cash Fund Payments, who cashed or deposited their initial check or received the Settlement proceeds through digital means, as long as the average payment amount is $3.00 or more. If there is not enough money to provide qualifying Class Members with an additional $3.00 payment, and if possible, the remaining Net Settlement Fund will be distributed to a non-profit recipient to be agreed to by the parties and approved by the Court.

### THE LAWYERS REPRESENTING YOU

**21.    Do I have a lawyer in this case?**

Yes, the Court has appointed Shub & Johns LLC as Class Counsel to represent you and the Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Action.

**22.    How will Class Counsel be paid?**

Class Counsel will file a motion asking the Court to award them attorneys' fees of up to a maximum of one-third (1/3) of the $1,500,000.00 Settlement Fund, plus the reimbursement of their reasonable costs and expenses (referred to collectively as "Fee Award and Costs"). They will also ask the Court to approve up to $1,500 Service Awards to each of the Class Representatives for participating in this Action and for their efforts in achieving the Settlement. If awarded, these amounts will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees and expenses, and Service Awards will be made available on the Settlement Website at www.xxxxxxxx.com before the deadline for you to comment or object to the Settlement. You can request a copy of the application by contacting the Settlement Administrator, at 1-XXX-XXX-XXXX.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Class Member and want to keep any right you may have to sue or continue to sue Hope College and/or the Released Parties on your own based on the claims raised in this Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Settlement.

**23.    How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must complete and sign a Request for Exclusion. The Request for Exclusion must be in writing and identify the case name *In Re Hope College Data Security Breach Litigation*, Case No. 1:22-cv-01224 (W.D. Mich.); state the name, address and telephone number and unique identifier of the Class Members seeking exclusion; identify any lawyer representing the Class Member; be physically signed by the Person(s) seeking exclusion; and must also contain a statement to the effect that "I/We

**Questions? Go to www.xxxxxxxxxxxxxxx.com or call 1-XXX-XXX-XXXX**
**This Settlement affects your legal rights even if you do nothing.**
7

hereby request to be excluded from the proposed Settlement Class in *In Re Hope College Data Security Breach Litigation*, Case No. 1:22-cv-01224 (W.D. Mich.)." The Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator at the address below no later than **xxxx xx, 2024**:

Hope College Data Breach Administrator
P.O. Box ____
_____, __ _____-____

You cannot exclude yourself by telephone or by e-mail.

**24.    If I exclude myself, can I still get Credit Monitoring and Insurance Services, or a Settlement Payment as part of this class action settlement?**

No. If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You can only get Credit Monitoring and Insurance Services from the Settlement, or a cash payment if you stay in the Settlement and submit a valid Claim Form.

**25.    If I do not exclude myself, can I sue Hope College for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Hope College and Released Parties for the claims that this Settlement resolves. You must exclude yourself from this Action to start or continue with your own lawsuit or be part of any other lawsuit against Hope College or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

**OBJECT TO OR COMMENT ON THE SETTLEMENT**

**26.    How do I tell the Court that I do not like the Settlement?**

You can ask the Court to deny approval of the Settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement Payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) identify the case name and number; (b) state the Class Member's full name, current mailing address, and telephone number; (c) contain a statement by the Class Member that he or she believes themself to be a member of the Settlement Class; (d) include proof that the Class Member is a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Breach); (e) identify the specific factual and legal grounds for the objection; (f) identify whether the Objection is an objection to the Settlement in part or in whole; (g) state whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (h) identify all counsel representing the Class Member, if any; (i) include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past five (5) years; (j) include all documents or writings that the Class Member desires the Court to consider; (k) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing; and (l) contain the signature of the Class Member or the Class Member's duly authorized attorney or representative. All objections must be submitted to the Court either by mailing them to the Clerk of Court's Office, U.S. District Court for the Western District of Michigan, 107 Federal Bldg., 410 W Michigan Ave., Kalamazoo MI 49007, or filing in person with the Court or postmarked on or before **xxxx xx, 2024**.

**27.    What is the difference between objecting and requesting exclusion?**

Objecting is telling the Court you do not like something about the Settlement. You can object only if you stay in the Class (that is, do not exclude yourself). Requesting exclusion is telling the Court you do not want to be part of the Class or the Settlement. If you exclude yourself, you cannot object to the Settlement because it no longer affects you.

**THE FINAL APPROVAL HEARING**

**28.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on **xxxx xx, 2024** at __:___ .m. in Courtroom ___ before the Honorable Paul L. Maloney, U.S.D.J., U.S. District Court for the Western District of Michigan, 107 Federal Bldg., 410 W Michigan Ave., Kalamazoo MI 49007.

The date and time of the Final Approval Hearing is subject to change without further notice to the Settlement Class. Class Members should monitor the Settlement Website or the Court's online docket site (*see* Question 32) to confirm whether the date for the Final

**Questions? Go to www.xxxxxxxxxxxxxxx.com or call 1-XXX-XXX-XXXX**
**This Settlement affects your legal rights even if you do nothing.**
8

Approval Hearing is changed. Please note that the hearing may be held via telephone or video conference. All details about the Final Approval Hearing will be posted on the settlement website.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will decide whether to approve: the Settlement; Class Counsel's application for Fee Award and Costs; and the Service Awards to the Class Representatives. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**29.    Do I have to come to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your written objection on time the Court will consider it.

**30.    May I speak at the Final Approval Hearing?**

Yes. If you wish to attend and speak at the Final Approval Hearing, you must indicate this in your written objection (*see* Question 26). Your objection must state that it is your intention to appear at the Final Approval Hearing and must identify any witnesses you may call to testify or exhibits you intend to introduce into evidence at the Final Approval Hearing. If you plan to have your attorney speak for you at the Final Approval Hearing, your objection must also include your attorney's name, address, and phone number.

## IF YOU DO NOTHING

**31.    What happens if I do nothing at all?**

If you are a Class Member and you do nothing, you will not receive any Settlement Benefits. You will also give up certain rights, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Hope College or any of the Released Parties about the legal issues in this Action and released by the Settlement Agreement.

## GETTING MORE INFORMATION

**32.    How do I get more information?**

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.xxxxxxxxxxx.com, or by contacting Class Counsel (*see* below), by accessing the Court docket in this case, for a fee, through the Court's ECF System at PACER, https://pacer.uscourts.gov/, or by visiting the office of the Clerk of Court's Office, U.S. District Court for the Western District of Michigan, 107 Federal Bldg., 410 W Michigan Ave., Kalamazoo MI 49007.

If you have questions about the proposed Settlement or anything in this Notice, you may contact Class Counsel at:

Benjamin F. Johns
**SHUB & JOHNS LLC**
c/o Hope College Data Breach Settlement
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
T: (610) 477-8380
info@xxxxxxxxxx.com

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

**Questions? Go to www.xxxxxxxxxxx.com or call 1-XXX-XXX-XXXX.**
**This Settlement affects your legal rights even if you do nothing.**

# Exhibit E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE HOPE COLLEGE DATA
SECURITY BREACH LITIGATION

Case No: 1:22-cv-01224-PLM

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Before the Court is Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter's (collectively, "Plaintiffs") Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"), brought individually and on behalf of those similarly situated. The Court, having considered the Motion, the supporting Brief, the Parties' Settlement Agreement dated September 8, 2023 (the "Settlement Agreement" – attached to the Declaration of Benjamin F. Johns in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement), including the proposed Long Notice, Short Notice, and Claim Form (attached as Exhibits D, F, and A, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown hereby grants the motion as follows:

1

**Preliminary Approval of Settlement Agreement**

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.      This Court has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, and Defendant Hope College.

3.      The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that it is hereby preliminarily approved and notice of the settlement should be provided to the Settlement Class Members and that a hearing shall be held as set forth below.

**Class Certification**

4.      Solely for purposes of the Settlement, the Court conditionally certifies the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

> all natural persons whose Personal Information was compromised in the Data Breach that was discovered by Hope College on or around September 27, 2022.

5.      Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Hope College, its subsidiaries, parent companies, successors, predecessors, and any entity in which Hope College or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period;

and (4) the successors or assigns of any such excluded natural person.

      6.      Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that:

      a.    the Settlement Class is so numerous that joinder of all members is impracticable;

      b.    there are questions of law or fact common to the Settlement Class;

      c.    Plaintiffs and Settlement Class Counsel (as defined below) fairly and adequately represent the Settlement Class;

      d.    the claims of Plaintiffs are typical of those of Settlement Class Members;

      e.    common issues predominate over any individual issues affecting the members of the Settlement Class;

      f.    Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and

      g.    settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

      7.      The Court appoints Benjamin F. Johns of Shub & Johns LLC as Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

      8.      The Court hereby appoints Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter

as the Class Representatives, for settlement purposes only, on behalf of the Settlement Class.

## Notice to Settlement Class Members

9.    Pursuant to Federal Rule of Civil Procedure 23(e), the Court approves the Long Notice and the Short Notice (the "Settlement Notices"), attached as Exhibits D and F, respectively, to the Settlement Agreement, and finds that the dissemination of the Settlement Notices substantially in the manner and form set forth in § 6 of the Settlement Agreement complies fully with the requirements of the Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

10.    The Court further approves the Claim Form, substantially similar to Exhibit A to the Settlement Agreement, which will be available both on the Settlement Website and by request.

11.    The notice procedures described above are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

12.    The Court hereby orders that, within fourteen (14) days of entry of

this Order, Hope College shall provide to the Settlement Administrator the contact information of Settlement Class Members, including names and physical addresses, that is currently in Hope College's possession.

13.     No later than thirty-five (35) days from the date of this Order preliminarily approving the Settlement ("Notice Commencement Date"), Settlement Class Counsel shall cause the Settlement Administrator to send via U.S. mail the Short Notice to each Settlement Class member and shall cause to be published the Long Notice, thereby making it available to the rest of the Settlement Class as stated in the proposed Notice Plan.

14.     Contemporaneously with seeking Final Approval of the Settlement, Settlement Class Counsel and Hope College shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with the Notice Plan.

15.     All costs incurred in disseminating and otherwise in connection with the Settlement Notices shall be paid from the Settlement Fund.

16.     The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and thus are approved for dissemination to the Settlement Class. The Claim Form shall be made

5

available to the Settlement Class as set forth on the Notice Plan and shall be made available to any potential Class Member that requests one.

**Settlement Class Members Responses and Scheduling Final Approval Hearing**

17.    Settlement Class Members may opt-out or object up to sixty (60) days from the Notice Commencement Date (the "Opt-Out Deadline").

18.    Any member of the Settlement Class who or that wishes to be excluded ("opt out") from the Settlement Class must send a written request to the designated Post Office Box established by the Settlement Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class, but must in each instance individually and personally sign and submit an opt-out request. All Settlement Class Members that opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Hope College.

19.    Any member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement and Release, whether or not such Settlement Class Member objected to the Settlement and

whether or not such Settlement Class Member received consideration under the Settlement Agreement.

20.    The Court adopts the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
| --- | --- |
| Hope College provides CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of this Motion |
| Hope College to provide contact information for Settlement Class Members to Settlement Administrator | Within 14 days after entry of Preliminary Approval Order |
| Notice Program commences | Within 35 days after entry of Preliminary Approval Order |
| Notice Program concludes | Within 45 days after entry of Preliminary Approval Order |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d) | 90 days after the appropriate governmental officials are served with CAFA Notice |
| Postmark deadline for Request for Exclusion (Opt-Out) or Objections | 60 days after commencement of Notice Program |
| Deadline to file Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | No later than 14 days prior to the Objection Deadline |
| Deadline to file Plaintiffs' Motion for Final Approval of the Settlement Agreement | No later than 14 days prior to the Final Fairness Hearing |
| Postmark / Filing Deadline for Filing Claims | 90 days after commencement of the Notice Program |

| Deadline for Plaintiffs to file any Response to Objections or Supplement to Motion for Final Approval | No later than 7 days prior to the Final Fairness Hearing |
|---|---|
| Deadline for Settlement Administrator to File or Cause to be Filed, if Necessary, a Supplemental Declaration with the Court | At least 5 days prior to the Final Fairness Hearing |
| Final Approval Hearing | To be set by the Court and held at the United States District Court for the Western District of Michigan, 137 Federal Bldg, 410 W. Michigan Ave, Kalamazoo, MI 49007, in Courtroom –     Floor and/or by virtual attendance, details of which to be provided before the Final Approval Hearing on the Settlement Website. |

21.    A hearing on the Settlement (the "Final Approval Hearing") shall be held before this Court on a date set by the Court.

22.    At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the Release; (d) entry of the Final Approval Order; and (e) entry of final judgment in this Litigation. Settlement Class Counsel's application for award of attorney's fees and costs and request for the court to award a service award to the named Plaintiffs shall also be heard at the time of the hearing.

23.    The date and time of the Final Approval Hearing shall be subject to

8

adjournment by the Court without further notice to the members of the Settlement Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that shall not alter the deadlines for mailing and publication of notice, the Opt-Out deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Approval Hearing will be posted on the Settlement Website.

24.    Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through its own attorney. Settlement Class Members that do not timely object or opt out and that do not have an attorney enter an appearance on their behalf will be represented by Settlement Class Counsel.

25.    Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the proposed Settlement. Any Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Settlement Class Counsel's application for fees and expenses, or (d) the service award request, by mailing a written objection, with a postmark date no later than the Objection

Date, to Settlement Class Counsel and Hope College's counsel. The Settlement Class Member making the objection (the "Objector") or his or her counsel may also file an objection with the Court through the Court's Electronic Court Filing ("ECF") system, with service on Settlement Class Counsel and Hope College's Counsel made through the ECF system. For all objections mailed to Settlement Class Counsel and counsel for Hope College, Settlement Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

26.    The Objector's objection must be either (1) filed with the Court no later than sixty (60) days after the Notice Commencement Date or (2) mailed to Settlement Class Counsel and Hope College's counsel, with a postmark date of no later than sixty (60) days after the Notice Commencement Date. To be valid, the objection must include: (i) the Objector's full name and address; (ii) the case name and docket number, *In Re Hope College Data Security Breach Litigation*, Case No. 1:22-cv-01224-PLM (W.D. Mich.); (iii) information identifying the Objector as a Settlement Class Member, including proof that the Objector is a member of the Settlement Class (e.g., copy of the Objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the Objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the Objector believes applicable; (v) the identity of any and all counsel representing the

Objector in connection with the objection; (vi) a statement whether the Objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the Objector's signature or the signature of the Objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

27.    Only Settlement Class Members that have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Approval Hearing. Any Settlement Class Member who does not timely file and serve an objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Release; (c) entry of Final Approval Order or any judgment; (d) Settlement Class Counsel's application for fees, costs, and expenses; and/or (e) the service award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

28.    Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the Settlement.

29.    Upon entry of the Order and Final Judgment, all members of the Settlement Class that have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Hope College with respect to all of the Released Claims.

30.     Hope College shall cause to be prepared and sent all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. § 1715. The costs associated with providing notice under CAFA shall be paid from the Settlement Fund.

31.     Settlement Class Counsel and counsel for Hope College shall cooperate promptly and fully in the preparation of such notices, including providing Hope College with any and all information in its possession necessary for the preparation of these notices. Hope College shall provide, or cause to be provided, courtesy copies of the notices to Settlement Class Counsel for the purpose of implementing the settlement. Hope College shall provide notice to Settlement Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

## Administration of the Settlement

32.     The Court hereby appoints the settlement administrator proposed by the Parties, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Settlement Administrator"). Responsibilities of the Settlement Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to settlement

12

administration; and (e) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, the Settlement Administrator and costs of administration shall be paid from the Settlement Fund.

33.    In the event the Settlement Agreement and the proposed Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement—the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Hope College and any other Released Entity, and Hope College and any other Released Entities shall retain any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation). The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34.    Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with

13

the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Hope College as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed Settlement.

**IT IS SO ORDERED.**

Dated: _____    _____
The Honorable Paul L. Maloney
United States District Court Judge

14

# Exhibit F

**COURT APPROVED LEGAL NOTICE**
*In Re Hope College Data Security Breach Litigation*
Case No. 1:22-cv-01224
U.S. District Court for the Western District of Michigan

## As a Result of the HOPE COLLEGE DATA BREACH, You Can Get CASH or Credit Monitoring and Insurance Services to Protect Your Information.

.

*This is <u>not</u> a solicitation from a lawyer.*

## This is NOT a Claim Form.

## For more information about the Settlement and how to file a Claim Form visit or call:

www.xxxxxxxxx.com
1-XXX-XXX-XXXX

---

*In Re Hope College Data Security Breach Litigation*
c/o Settlement Administrator
P.O. Box _____
_____, __ _____

Forwarding Service Requested

|||₁₁||₁₁||₁₁||₁₁||₁₁||₁₁||₁₁||

Postal Service: Please do not mark barcode
Claim No.:

[CLAIMANT INFO]

---

A proposed Settlement arising out of a data breach has been reached with Hope College. On September 27, 2022, an unauthorized user was able to access files stored on Hope's computer systems. As a result, Personal Information of individuals may have been accessed (the "Data Breach"). Impacted Personal Information may have included names, dates of birth, Social Security numbers, driver's license numbers, and student ID numbers.

**Who Is Included?** The Court decided that Class Members include all natural persons whose Personal Information was compromised in the Data Breach that was discovered by Hope College on or around September 27, 2022, including all who were notified by Hope College that their Personal Information may have been compromised because of the Hope College Data Breach.

**What Does the Settlement Provide?** The Settlement establishes a $1,500,000.00 Settlement Fund to be used to pay for one of the following for Class Members: Credit Monitoring and Insurance Services, Documented Loss Payments for reimbursement of Documented Losses, or Cash Fund Payments to valid claimants; costs of Notice and administration; Service Awards to the Class Representatives; and Attorneys' Fee Award and Costs. Also, Hope College has agreed to undertake certain remedial measures and enhanced data security measures. Claimants may select **one** of the following three (3) forms of Settlement relief: (a) Credit Monitoring and Insurance Services, OR (b) Documented Loss Payments, OR (c) a Cash Fund Payment, as described below:

- **Credit Monitoring and Insurance Services** – one (1) year of Credit Monitoring and Insurance Services; OR
- **Documented Loss Payments** – reimbursement for certain Documented Losses, i.e., money spent or lost, that is more likely than not related to the Hope College Data Breach (up to $5,000), not otherwise reimbursable by insurance; OR
- **Cash Fund Payments** – a cash payment, in an amount to be determined consistent with the Settlement. The Cash Fund Payments may be increased or reduced *pro rata* depending on the number of Class Members that participate in the Settlement.

**How to Get Benefits:** You must complete and file a Claim Form and Release online or by mail postmarked by **xxxx XX, 2024**, including required documentation. You can file your claim online at **www.xxxxxxxxx.com**. You may also get a paper Claim Form at the above settlement website, or by calling the toll-free number below, and submit by U.S. mail.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **xxxx XX, 2024**. If you do not exclude yourself, you will release any claims you may have against Hope College or Released Parties (as defined in the Settlement Agreement) related to the Hope College Data Breach, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **xxxx XX, 2024**.

**The Final Approval Hearing.** The Court has scheduled a Final Approval Hearing in this case (*In Re Hope College Data Security Breach Litigation*, Case No. 1:22-cv-01224 (W.D. Mich.)) for **xxxx XX, 2024 at __:__ [a.m./p.m.] at the Kalamazoo Federal Courthouse**, to consider: whether to approve the Settlement, Service Awards, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, so please check the settlement website for those details.

**More Information.** Complete information about your rights and options, as well as the Claim Form and Release, the Long Form Notice, and Settlement Agreement are available at **www.xxxxxxxxx.com**, or by calling toll free **1-XXX-XXX-XXXX**.

# Exhibit 2



SHUB & JOHNS LLC

Four Tower Bridge
200 Barr Harbor Drive
Suite 400 - PMB 99452
Conshohocken, PA 19428

(610) 477-8380
SHUBLAWYERS.COM
INFO@SHUBLAWYERS.COM



## Shub & Johns LLC

Four Tower Bridge
200 Barr Harbor Drive
Suite 400 - PMB 99452
Conshohocken, PA 19428

(610) 477-8380
JShub@shublawyers.com
BJohns@shublawyers.com
SHolbrook@shublawyers.com
DGomez@shublawyers.com
NBjotvedt@shublawyers.com
LRusso@shublawyers.com



**Jonathan Shub** is a co-founder of Shub & Johns LLC. Mr. Shub graduated from American University (Washington, D.C.), B.A., in 1983 and Delaware Law School of Widener University (now Widener University Delaware School of Law), cum laude, in 1988. While enrolled in Delaware Law School of Widener University, he served as the Law Review Articles Editor. Jon was a Wolcott Fellow Law Clerk to the Hon. Joseph T. Walsh, Delaware Supreme Court in 1988. He is a member of the American Association of Justice (past chairman of class action litigation section), the American Bar Association and the Consumer Attorneys of California. Jon was named a Pennsylvania SuperLawyer from 2005-2009 and 2011-2019. Jon is also an active member of his local synagogue and an avid political fundraiser.

Jon is recognized as one of the nation's leading class action consumer rights lawyers, based on his extensive experience and successes representing classes of individuals and businesses in a vast array of matters involving unlawful conduct. Jon has gained notable attention in the area of defective consumer electronics and computer hardware as a result of many leadership positions in federal and state cases against companies such as Hewlett-Packard, Maytag, IBM and Palm. In

fact, Maximum PC Magazine, a leading industry publication, said years back that "Shub is becoming renowned for orchestrating suits that have simultaneously benefited consumers and exposed buggy hardware." He also has vast experience in mass tort class actions such as Vioxx, light tobacco litigation, and in consumer class actions such as energy deregulation. He is currently heavily involved in litigation on behalf of businesses that were denied insurance coverage involving COVID-19.

Jon launched his career in the Washington office of Fried, Frank, Harris, Shriver & Jacobson, where he worked on complex commercial matters including corporate investigations and securities litigation. He then moved into a practice of consumer protection and advocacy. Prior to joining Kohn, Swift & Graf, P.C., Jon was the resident partner in the Philadelphia office of Seeger Weiss LLP. He is a frequent lecturer on cutting edge class action issues, and is a past chairman of the Class Action Litigation Group of the American Association for Justice. Jon regularly appears in state and federal courts nationwide, and in many high profile consumer protection cases. Jon's leadership roles require him to develop the theories of liability for the entire class as well as the overall trial strategy for the cases. Most recently, Jon was co-lead and co-trial counsel in a case against municipality for violation of a state privacy law. The case was tried before U.S. District Judge Wendy Beetlestone, and resulted in a jury award of approximately $68,000,000 to the Class.

**Jon's experience in class action litigation includes the following leadership positions:**

- Serves as lead counsel in New York against KIWI Energy LLC for deceptive advertising of                    residential energy practices.
- Served as co-lead counsel in Illinois against Direct Energy for deceptive advertising ofresidential energy practices.
- Served as co-lead counsel in Pennsylvania against PG&E for deceptive advertising of residentialenergy practices.
- Served as co-lead counsel in settled national litigation against CPG International for deceptive advertising in connections with deceptive advertising of AZEK-branded decking products.
- Served as executive committee counsel in settled national litigation against Western Union fordeceptive practices in connection with money transfers.
- Served as co-lead counsel in litigation against Facebook for deceptive advertising practices.
- Served as co-lead counsel in a national class action against Palm involving defective smart phones.
- Served as co-lead counsel in a national class action against Nissan for defective tires on its 350Zmodel.
- Served as co-lead counsel in a national class action against Hewlett Packard claiming defects incertain printer models.
- Served as co-lead counsel in litigation against Vonage for consumer fraud.
- Served as co-lead counsel in litigation against Maytag, where he was instrumental in negotiating a $42.5 million nationwide settlement for a class of more than 200,000 Maytag customers.
- Served as co-lead counsel in a nationwide class settlement against IBM that affected more than 3million hard drive purchasers.

**Publications and Presentations:**

- Moderator, Class Actions, Annual Meeting of American Association of Justice, 2015, 2016
- Speaker, Class Actions, Annual Meeting of American Association of Justice, 2015, 2016
- Speaker, "Finding the Right Class Action", New Jersey Association of Justice, June, 2016
- Speaker, "Nuts and Bolts of MDL Practice", Class Action Symposium, Chicago, Illinois, June, 2016
- Speaker, Computer Technology and Consumer Products Class Actions", Consumer Attorneys of California 46th Annual Convention, November 2007
- Frequent speaker, American Association for Justice (formerly ATLA)
- Author, Distinguishing Individual from Derivative Claims in the Context of Battles for Corporate Control", 13 Del. J. Corp. L 579 (1998)
- Author, "Shareholder Rights Plans? Do They Render Shareholders Defenseless Against Their Own Management", 12 Del J. Corp, L. 991 (1997)
- Co-author, "Once Again, the Court Fails to Rein in RICO", Legal Times (April 27, 1992)
- Co-author, "Failed One-Share, One Vote Rule Let SEC Intrude in Boardroom", National LawJournal (October 8, 1990).



**Benjamin F. Johns**, a co-founding partner at Shub & Johns LLC, is a consumer protection advocate with nearly two decades of litigation experience. He is admitted to practice in all of the state and federal courts in Pennsylvania and New Jersey, and has personally argued in the Third Circuit, the D.C. Circuit, PA Supreme Court, and PA Commonwealth Court. Over the course of his career, Mr. Johns has taken and defended hundreds of depositions, argued and won dispositive motions (including contested motions for class certification), and been appointed to leadership positions by various courts across the country. He was recently described by the legal publication Law360 as being a "data breach specialist." He was the lead litigator at his prior firm in a case against Apple which resulted in a $50 million settlement and was the No. 1 ranked Consumer Fraud settlement in California for 2022 by TopVerdict.com.

Mr. Johns is currently serving as court appointed interim co-lead counsel in several consumer data breach class actions, including *Nelson v. Connexin Software Inc. d/b/a Office Practicum,* No. 2:22-cv-04676-JDW (E.D. Pa.); *In re NCB Management Services, Inc. Data Breach Litig.,* No. 2:23-cv-1236-KNS (E.D. Pa.); *In re Onix Group, LLC Data Breach Litig.* No. 23-2288-KSM (E.D. Pa.); *In re CorrectCare Data Breach Litig.,* No. 5:22-319-DCR (E.D. Ky.); *In re Community Health Systems, Inc. Data Sec. Litig.,* No. 3:23-cv-00285 (M.D. Tenn.); *In re R&B Corporation of Virginia d/b/a Credit Control Corporation, Data Security Breach Litig.,* No. 4:23-CV-66 (E.D. Va.); *Deevers v. Wing Financial Services LLC,* No. 22-CV-0550-CVE-JFJ (N.D. Okla.); and *Nelson v. Webster Bank, N.A.,* No. CV-23-6171285-S (Conn. Super. Ct.).

Mr. Johns was elected by fellow members of the Philadelphia Bar Association to serve a three-year term on the Executive Committee of the organization's Young Lawyers Division. He

also served on the Editorial Board of the Philadelphia Bar Reporter and the Board of Directors for the Dickinson School of Law Alumni Society. Mr. Johns has been published in the Philadelphia Lawyer magazine and the Philadelphia Bar Reporter.  While in college, Mr. Johns was on the varsity basketball team and spent a semester studying abroad in Osaka, Japan. He graduated from Harriton High School in 1998 as the then all-time leading scorer in the history of the boys' basketball program. Ben has been named a "Lawyer on the Fast Track" by The Legal Intelligencer, a "Top 40 Under 40" attorney by The National Trial Lawyers, and a Pennsylvania "Rising Star"/"Super Lawyer."

**Over the course of his career, Mr. Johns has provided substantial assistance in the prosecution of the following cases:**

- *In re Macbook Keyboard Litig.,* No. 5:18-cv-02813-EJD (N.D. Cal.) (Mr. Johns took and defended numerous depositions and successfully argued two motions to dismiss and co-argued plaintiffs' motion for class certification in this widely-covered case against Apple which ultimately settled for a $50 million common fund. In granting final approval to the settlement, the district court wrote that plaintiffs' counsel "achieved excellent results for the class.")

- *Kostka v. Dickey's Barbecue Restaurants Inc*., No. 3:20-CV-03424-K (N.D. Tex.) (Mr. Johns served as co-lead counsel in this consumer data breach case which resulted in a $2.35 million common fund settlement).

- *Udeen v. Subaru of Am., Inc.,* No. 18-17334 (RBK/JS) (D.N.J.) (Mr. Johns was co-lead counsel in this consumer class action involving allegedly defective infotainment systems in certain Subaru automobiles, which resulted a settlement valued at $6.25 million. At the hearing granting final approval of the settlement, the district court commented that the plaintiffs' team "are very skilled and very efficient lawyers…They've done a nice job.")

- *Breneman v. Keystone Health,* Case No. 2023-618 (Pa. Ct. Com. Pl.) (Mr. Johns was co-lead counsel in this medical data breach class action which resulted in a $900,000 common fund settlement).

- *Hughes v. UGI Storage Co.,* 263 A.3d 1144 (Pa. 2021) (Mr. Johns argued this precedent-setting *de facto* takings matter before the Pennsylvania Supreme Court in October of 2021, in which he secured a 6-0 reversal of the underlying Commonwealth Court decision that had affirmed the trial court's dismissal of the case)

- *In re Nexus 6P Product Liability Litig.*, No. 5:17-cv-02185-BLF (N.D. Cal.) (Mr. Johns served as co-lead counsel – and argued two of the motions to dismiss – in this defective smartphone class action.  The case resulted in a settlement valued at $9.75 million, which Judge Beth Labson Freeman described as "substantial" and an "excellent resolution of the case.")

- *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal.) (Mr. Johns served as court-appointed co-lead counsel in this consumer class action concerning allegedly defective MyFord Touch infotainment systems, which settled for $17 million shortly before trial.)

- *Weeks v. Google LLC*, 5:18-cv-00801-NC, 2019 U.S. Dist. LEXIS 215943, at *8-9 (N.D. Cal. Dec. 13, 2019) (Mr. Johns was co-lead counsel – and successfully argued against a motion to dismiss – in this defective smartphone class action. A $7.25 million settlement was reached, which Magistrate Judge Nathanael M. Cousins described as being an "excellent result.")

- *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC (D. Colo.) (Mr. Johns served as co-lead counsel of behalf of a class of millions of cardholders who were impacted by a data breach at Chipotle restaurants. After largely defeating a motion to dismiss filed by Chipotle, the case resulted in a favorable settlement for affected consumers. At the final approval of the settlement, the district court noted that class counsel has "extensive experience in class action litigation, and are very familiar with claims, remedies, and defenses at issue in this case.")

- *Bray et al. v. GameStop Corp.*, 1:17-cv-01365-JEJ (D. Del.) (Mr. Johns served as co-lead counsel for consumers affected by a data breach at GameStop. After largely defeating a motion to dismiss, the case was resolved on favorable terms that provided significant relief to GameStop customers. At the final approval hearing, the District Judge found the settlement to be "so comprehensive that really there's nothing else that I need developed further," that "the settlement is fair," "reasonable," and "that under the circumstances it is good for the members of the class under the circumstances of the claim.")

- *In re: Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litig.*, No. 15-cv-18-JLL-JAD (D.N.J.) (Mr. Johns served on the Plaintiffs' Steering Committee in this MDL proceeding, which involved allegedly defective wood-composite decking, and which ultimately resulted in a $20 million settlement.)

- *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.) (Mr. Johns was actively involved in these Multidistrict Litigation proceedings, which involve allegations that dozens of banks reorder and manipulate the posting order of debit transactions. Settlements collectively in excess of $1 billion were reached with several banks. Mr. Johns was actively involved in prosecuting the actions against U.S. Bank ($55 million settlement) and Comerica Bank ($14.5 million settlement).)

- *Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation*, No. 1:10-cv-00264-CAB (N.D. Ohio) (Mr. Johns was the primary associate working on this case which resulted in a $20 million settlement on behalf of hospitals and surgery centers that purchased a sterilization device that allegedly did not receive the required pre-sale authorization from the FDA.)

- *West v. ExamSoft Worldwide, Inc.,* No. 14-cv-22950-UU (S.D. Fla.) (Mr. Johns was co-lead counsel in this case which resulted in a $2.1 million settlement on behalf of July 2014 bar exam applicants in several states who paid to use software for the written portion of the exam which allegedly failed to function properly)

- *Henderson v. Volvo Cars of North America, LLC,* No. 2:09-cv-04146-CCC-JAD (D. N.J.) (provided substantial assistance in this consumer automobile case that settled after the plaintiffs prevailed, in large part, on a motion to dismiss)

- *In re Marine Hose Antitrust Litig.,* No. 08-MDL-1888 (S.D. Fla.) (settlements totaling nearly $32 million on behalf of purchasers of marine hose.)

- *In re Philips/Magnavox Television Litig.,* No. 2:09-cv-03072-CCC-JAD (D. N.J.) (settlement in excess of $4 million on behalf of consumers whose flat screen televisions failed due to an alleged design defect. Mr. Johns argued against one of the motions to dismiss.)

- *Allison, et al. v. The GEO Group*, No. 2:08-cv-467-JD (E.D. Pa.), and *Kurian v. County of Lancaster*, No. 2:07-cv-03482-PD (E.D. Pa.) (settlements totaling $5.4 million in two civil rights class action lawsuits involving allegedly unconstitutional strip searches at prisons)



**Samantha E. Holbrook,** a partner at Shub & Johns LLC, has extensive experience in consumer protection class action litigation. Prior to joining the firm, Ms. Holbrook practiced at two different national class action law firms where she represented consumers and investors in nationwide class actions.  Ms. Holbrook has experience handling and litigating all aspects of the prosecution of national class action litigation asserting claims under state and federal law challenging predatory lending practices, product defects, breach of fiduciary duty, antitrust claims, consumer fraud and unfair and deceptive acts and practices in federal courts throughout the country.

Ms. Holbrook has also obtained favorable recoveries on behalf of multiple nationwide classes of borrowers whose insurance was force-placed by their mortgage services.

Ms. Holbrook received her law degree from Temple University Beasley School of Law. While in law school, she served as the President of the Moot Court Honor Society and President of the Student Animal Legal Defense Fund. She was also a member of Temple's nationally recognized Trial Team. Upon graduating, she served as an adjunct professor for Temple coaching its Trial Team from 2013-2018. Ms. Holbrook received her undergraduate degrees from the Pennsylvania State University in Political Science and Spanish. While in college, Ms. Holbrook spent a semester studying abroad in Sevilla, Spain. She is proficient in Spanish. Ms. Holbrook also currently serves as the Board President for Citizens for a No-Kill Philadelphia, a Philadelphia-

based animal welfare advocacy organization, and serves on the Board of Directors of City of Elderly Love, a senior-focused animal rescue organization.

Ms. Holbrook has been recognized by Pennsylvania Super Lawyers as a Rising Star for each year from 2020-2023. She has also been recognized as a Top Young Rising Attorney in Pennsylvania in 2020, and a Pennsylvania & Delaware Top Attorneys Rising Stars in 2021. She is admitted to practice in all federal and state courts in Pennsylvania and New Jersey.

**Over the course of her career, Ms. Holbrook has provided substantial assistance in the prosecution of the following cases:**

- *Suarez v. Nissan North America*, No. 3:21-cv-00393 (M.D. Tenn.) (appointed lead class counsel in a consumer class action alleging defective headlamps in Nissan Altima vehicles which reached a settlement valued at over $50 million that provides reimbursements, free repairs, and an extended warranty);

- *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K (N.D. Tex.) (appointed as additional interim class counsel on behalf of consumers whose sensitive payment card information was exposed in a data breach at Dickey's restaurant chains);

- *In re Wawa, Inc. Data Security Litig.*, No. 2:19-cv-06019-GEKP (E.D. Pa.) (achieved $12 million settlement on behalf of consumers whose sensitive payment card information was exposed to criminals as part of a highly-publicized  data breach);

- *Lacher et al v. Aramark Corp., 2:19-cv-00687* (E.D. Pa. 2019) (represented a class of Aramark's current and former managers alleging that Aramark breached its employment contracts by failing to pay bonuses and restricted stock unit compensation to managers nationwide);

- *Turner v. Sony Interactive Entertainment LLC*, No. 4:21-cv-02454-DMR (N.D. Cal.) (class action lawsuit alleging that Sony's PlayStation 5 DualSense Controller suffers from a "drift defect" that results in character or gameplay moving on the screen without user command or manual operation of the controller thereby compromising its core functionality);

- *Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A.,* 09-CV-686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012) (approving $150 million settlement); and

- *In re 2008 Fannie Mae ERISA Litigation*, Case No. 09-cv-1350 (S.D.N.Y.) ($9 million settlement on behalf of participants in the Federal National Mortgage Association Employee Stock Ownership Plan).



**Damian Gomez** joined Shub & Johns LLC as an intake paralegal in March 2022. Damian graduated from the University of Texas at Austin in 2021 with a Bachelor's degree in History with a focus on Classical Studies, as well as a Certificate in Creative Writing. Damian's prior professional experiences include building relationship and communication skills with clientele while working as an Intake Specialist at Filevine, a legal software company. Various courses in copywriting and email marketing have alike prepared him for his initial role as intake paralegal at Shub & Johns.

Damian's current title at Shub & John's is Client Intake Specialist. His responsibilities include conducting widespread investigations and initial research into potential class action and consumer protection cases, interviewing and vetting potential clients and class representatives, and assisting in legal projects as necessary. Aside from legal assistance, Damian manages Shub & Johns's Marketing and Outreach ventures, writes for and oversees the Shub & Johns's website content, and runs Shub & Johns social media accounts.



**Nailah Bjotvedt** joined Shub & Johns LLC as a law clerk in January 2023. Nailah graduated from Drexel University in 2020 with a bachelor's degree in business administration, majoring in business and legal studies with a political science minor. Her prior professional experiences include serving as a law clerk for a prominent class action firm where she developed communication and writing skills. She is a third-year law student at Delaware Law School, graduating in May 2023. She currently assists staff attorneys at the law school's veterans law clinic, helping appeal adverse VA decisions.

Nailah's responsibilities at Shub include conducting widespread investigations and initial research into potential class action and consumer protection cases, interviewing and vetting potential clients and class representatives. She has been tasked with a wide variety of various legal projects and is actively exposed to all phases of the litigation process, assisting attorneys with filings, research, brief writing and more.



**Lacey Russo** began her career in the legal field in 2001, working in the Intellectual Property group at an international AmLaw 100 firm. She continued working on complex litigation matters, including consumer protection, ERISA, antitrust and fiduciary duty protection for over 15 years at a large plaintiffs' class action law firm before joining Shub & Johns in 2023. Lacey has worked on cases before state, federal and appellate courts across the country. She brings experience in assisting attorneys through every aspect of the litigation process.

Lacey studied at Villanova University and Algonquin College, graduating in 1999 with a bachelor's degree in paralegal studies.

# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

IN RE HOPE COLLEGE DATA
SECURITY BREACH LITIGATION

Case No: 1:22-cv-01224-PLM

**CLASS ACTION**

**JURY TRIAL DEMANDED**

---

## ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Before the Court is Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter's (collectively, "Plaintiffs") Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"), brought individually and on behalf of those similarly situated. The Court, having considered the Motion, the supporting Brief, the Parties' Settlement Agreement dated September 8, 2023 (the "Settlement Agreement" – attached to the Declaration of Benjamin F. Johns in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement), including the proposed Long Notice, Short Notice, and Claim Form (attached as Exhibits D, F, and A, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown hereby grants the motion as follows:

1

## Preliminary Approval of Settlement Agreement

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.      This Court has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, and Defendant Hope College.

3.      The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that it is hereby preliminarily approved and notice of the settlement should be provided to the Settlement Class Members and that a hearing shall be held as set forth below.

## Class Certification

4.      Solely for purposes of the Settlement, the Court conditionally certifies the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

> all natural persons whose Personal Information was compromised in the Data Breach that was discovered by Hope College on or around September 27, 2022.

5.      Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Hope College, its subsidiaries, parent companies, successors, predecessors, and any entity in which Hope College or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period;

2

and (4) the successors or assigns of any such excluded natural person.

      6.     Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that:

      a.   the Settlement Class is so numerous that joinder of all members is impracticable;

      b.   there are questions of law or fact common to the Settlement Class;

      c.   Plaintiffs and Settlement Class Counsel (as defined below) fairly and adequately represent the Settlement Class;

      d.   the claims of Plaintiffs are typical of those of Settlement Class Members;

      e.   common issues predominate over any individual issues affecting the members of the Settlement Class;

      f.   Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and

      g.   settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

      7.     The Court appoints Benjamin F. Johns of Shub & Johns LLC as Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

      8.     The Court hereby appoints Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter

as the Class Representatives, for settlement purposes only, on behalf of the Settlement Class.

**Notice to Settlement Class Members**

9.     Pursuant to Federal Rule of Civil Procedure 23(e), the Court approves the Long Notice and the Short Notice (the "Settlement Notices"), attached as Exhibits D and F, respectively, to the Settlement Agreement, and finds that the dissemination of the Settlement Notices substantially in the manner and form set forth in § 6 of the Settlement Agreement complies fully with the requirements of the Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

10.     The Court further approves the Claim Form, substantially similar to Exhibit A to the Settlement Agreement, which will be available both on the Settlement Website and by request.

11.     The notice procedures described above are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

12.     The Court hereby orders that, within fourteen (14) days of entry of

this Order, Hope College shall provide to the Settlement Administrator the contact information of Settlement Class Members, including names and physical addresses, that is currently in Hope College's possession.

13.    No later than thirty-five (35) days from the date of this Order preliminarily approving the Settlement ("Notice Commencement Date"), Settlement Class Counsel shall cause the Settlement Administrator to send via U.S. mail the Short Notice to each Settlement Class member and shall cause to be published the Long Notice, thereby making it available to the rest of the Settlement Class as stated in the proposed Notice Plan.

14.    Contemporaneously with seeking Final Approval of the Settlement, Settlement Class Counsel and Hope College shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with the Notice Plan.

15.    All costs incurred in disseminating and otherwise in connection with the Settlement Notices shall be paid from the Settlement Fund.

16.    The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and thus are approved for dissemination to the Settlement Class. The Claim Form shall be made

available to the Settlement Class as set forth on the Notice Plan and shall be made available to any potential Class Member that requests one.

**Settlement Class Members Responses and Scheduling Final Approval Hearing**

17.    Settlement Class Members may opt-out or object up to sixty (60) days from the Notice Commencement Date (the "Opt-Out Deadline").

18.    Any member of the Settlement Class who or that wishes to be excluded ("opt out") from the Settlement Class must send a written request to the designated Post Office Box established by the Settlement Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class, but must in each instance individually and personally sign and submit an opt-out request. All Settlement Class Members that opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Hope College.

19.    Any member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be bound by all the terms and provisions of the Settlement Agreement and Release, whether or not such Settlement Class Member objected to the Settlement and

whether or not such Settlement Class Member received consideration under the Settlement Agreement.

20.    The Court adopts the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
|---|---|
| Hope College provides CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of this Motion |
| Hope College to provide contact information for Settlement Class Members to Settlement Administrator | Within 14 days after entry of Preliminary Approval Order |
| Notice Program commences | Within 35 days after entry of Preliminary Approval Order |
| Notice Program concludes | Within 45 days after entry of Preliminary Approval Order |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d) | 90 days after the appropriate governmental officials are served with CAFA Notice |
| Postmark deadline for Request for Exclusion (Opt-Out) or Objections | 60 days after commencement of Notice Program |
| Deadline to file Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | No later than 14 days prior to the Objection Deadline |
| Deadline to file Plaintiffs' Motion for Final Approval of the Settlement Agreement | No later than 14 days prior to the Final Fairness Hearing |
| Postmark / Filing Deadline for Filing Claims | 90 days after commencement of the Notice Program |

| Deadline for Plaintiffs to file any Response to Objections or Supplement to Motion for Final Approval | No later than 7 days prior to the Final Fairness Hearing |
|---|---|
| Deadline for Settlement Administrator to File or Cause to be Filed, if Necessary, a Supplemental Declaration with the Court | At least 5 days prior to the Final Fairness Hearing |
| Final Approval Hearing | To be set by the Court and held at the United States District Court for the Western District of Michigan, 137 Federal Bldg, 410 W. Michigan Ave, Kalamazoo, MI 49007, in Courtroom –      Floor and/or by virtual attendance, details of which to be provided before the Final Approval Hearing on the Settlement Website. |

21.    A hearing on the Settlement (the "Final Approval Hearing") shall be held before this Court on a date set by the Court.

22.    At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the Release; (d) entry of the Final Approval Order; and (e) entry of final judgment in this Litigation. Settlement Class Counsel's application for award of attorney's fees and costs and request for the court to award a service award to the named Plaintiffs shall also be heard at the time of the hearing.

23.    The date and time of the Final Approval Hearing shall be subject to

adjournment by the Court without further notice to the members of the Settlement Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that shall not alter the deadlines for mailing and publication of notice, the Opt-Out deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Approval Hearing will be posted on the Settlement Website.

24.    Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through its own attorney. Settlement Class Members that do not timely object or opt out and that do not have an attorney enter an appearance on their behalf will be represented by Settlement Class Counsel.

25.    Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the proposed Settlement. Any Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Settlement Class Counsel's application for fees and expenses, or (d) the service award request, by mailing a written objection, with a postmark date no later than the Objection

Date, to Settlement Class Counsel and Hope College's counsel. The Settlement Class Member making the objection (the "Objector") or his or her counsel may also file an objection with the Court through the Court's Electronic Court Filing ("ECF") system, with service on Settlement Class Counsel and Hope College's Counsel made through the ECF system. For all objections mailed to Settlement Class Counsel and counsel for Hope College, Settlement Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

26.    The Objector's objection must be either (1) filed with the Court no later than sixty (60) days after the Notice Commencement Date or (2) mailed to Settlement Class Counsel and Hope College's counsel, with a postmark date of no later than sixty (60) days after the Notice Commencement Date. To be valid, the objection must include: (i) the Objector's full name and address; (ii) the case name and docket number, *In Re Hope College Data Security Breach Litigation*, Case No. 1:22-cv-01224-PLM (W.D. Mich.); (iii) information identifying the Objector as a Settlement Class Member, including proof that the Objector is a member of the Settlement Class (e.g., copy of the Objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the Objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the Objector believes applicable; (v) the identity of any and all counsel representing the

10

Objector in connection with the objection; (vi) a statement whether the Objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the Objector's signature or the signature of the Objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

27.    Only Settlement Class Members that have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Approval Hearing. Any Settlement Class Member who does not timely file and serve an objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Release; (c) entry of Final Approval Order or any judgment; (d) Settlement Class Counsel's application for fees, costs, and expenses; and/or (e) the service award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

28.    Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the Settlement.

29.    Upon entry of the Order and Final Judgment, all members of the Settlement Class that have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Hope College with respect to all of the Released Claims.

30.     Hope College shall cause to be prepared and sent all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. § 1715. The costs associated with providing notice under CAFA shall be paid from the Settlement Fund.

31.     Settlement Class Counsel and counsel for Hope College shall cooperate promptly and fully in the preparation of such notices, including providing Hope College with any and all information in its possession necessary for the preparation of these notices. Hope College shall provide, or cause to be provided, courtesy copies of the notices to Settlement Class Counsel for the purpose of implementing the settlement. Hope College shall provide notice to Settlement Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

## Administration of the Settlement

32.     The Court hereby appoints the settlement administrator proposed by the Parties, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Settlement Administrator"). Responsibilities of the Settlement Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to settlement

administration; and (e) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, the Settlement Administrator and costs of administration shall be paid from the Settlement Fund.

33.    In the event the Settlement Agreement and the proposed Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement—the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Hope College and any other Released Entity, and Hope College and any other Released Entities shall retain any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation). The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34.    Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with

13

the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Hope College as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed Settlement.

**IT IS SO ORDERED.**

Dated: _____        _____
                                                    The Honorable Paul L. Maloney
                                                    United States District Court Judge

14